# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-----------------------------------------------x

STEPHEN G. SAMARAS,
Individually and On Behalf of All
Others Similarly Situated,

        Plaintiff,

    v.

FIAT CHRYSLER AUTOMOBILES
N.V., SERGIO MARCHIONNE,
RICHARD K. PALMER and REID
BIGLAND,

        Defendants.

-----------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Case No. 16-12803

Honorable Linda V. Parker
District Court Judge

Honorable Stephanie Dawkins Davis
Magistrate Judge

**(Oral Argument Requested)**

# DEFENDANTS' REPLY MEMORANDUM
## OF LAW IN FURTHER SUPPORT OF THEIR MOTION
## TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Patrick G. Seyferth (P47575)
Roger P. Meyers (P73255)
BUSH SEYFERTH & PAIGE PLLC
3001 West Big Beaver Road
Troy, Michigan 48084
Telephone: (248) 822-7800
Facsimile: (248) 822-7001
seyferth@bsplaw.com
meyers@bsplaw.com

Robert J. Giuffra, Jr. (N.Y. 2309177)
William B. Monahan (N.Y. 4229027)
Darrell S. Cafasso (N.Y. 4147849)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
giuffrar@sullcrom.com
monahanw@sullcrom.com
cafassod@sullcrom.com

*Counsel for Defendants Fiat Chrysler Automobiles N.V.,
Sergio Marchionne and Richard K. Palmer*

Keefe A. Brooks (P31680)
Michael T. Price (P57229)
BROOKS WILKINS SHARKEY
& TURCO, PLLC
401 S. Old Woodward
Suite 400
Birmingham, Michigan 48009
Telephone: (248) 971-1710
Facsimile: (248) 971-1801
brooks@bwst-law.com
price@bwst-law.com

Paul Shechtman (N.Y. 2300242)
Rachel B. Goldman (N.Y. 2896272)
David A. Shargel (N.Y. 4366365)
BRACEWELL LLP
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 508-6154
Facsimile: (212) 938-3854
paul.shechtman@bracewell.com
rachel.goldman@bracewell.com
david.shargel@bracewell.com

*Counsel for Defendant Reid Bigland*

August 4, 2017

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ....................................................................................5

I.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THE
     CHALLENGED STATEMENTS WERE *NOT* MATERIAL...................5

     A.   FCA's Stock Price *Increase* Following the July 26, 2016 Release
          Demonstrates That the Challenged Statements Were Immaterial
          As a Matter of Law....................................................................6

     B.   Plaintiffs' Other Materiality Arguments Are Legally Flawed.............9

II.  PLAINTIFFS OFFER NOTHING TO REMEDY THEIR
     FAILURE TO PLEAD PARTICULARIZED FACTS
     GIVING RISE TO A "STRONG INFERENCE" OF
     SCIENTER .............................................................................12

     A.   In Their Opposition, Plaintiffs Do Not Dispute the Fatal
          Disconnect Between Their False Sales Reporting Allegations and
          the Challenged Statements ...............................................12

     B.   Plaintiffs' Remaining Scienter Theories Do Not Raise Any
          Inference of Scienter, Much Less the Required "Strong" One..........14

CONCLUSION................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bricklayers of W. Pa. Pension Plan* v. *Hecla Mining Co.*,
   No. 2:12-cv-00042-BLW, 2013 WL 5423875 (D. Idaho Sept. 26,
   2013) ....................................................................................................................13

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ..............................................................................9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Waters
   Corp.*,
   632 F.3d 751 (1st Cir. 2011).................................................................................4

*City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) .............................................................................2, 8

*In re Compuware Sec. Litig.*,
   386 F. Supp. 2d 913 (E.D. Mich. 2005) ..............................................................8

*D.E. & J. Ltd.* v. *Conaway*,
   284 F. Supp. 2d 719 (E.D. Mich. 2003) ...........................................................1, 3

*D.E. & J. Ltd.* v. *Conaway*,
   133 F. App'x 994 (6th Cir. 2005)..........................................................................7

*In re Diebold Sec. Litig.*,
   No. 5:05 CV 2873, 2008 WL 3927467 (N.D. Ohio Aug. 22, 2008).................14

*Fidel* v. *Farley*,
   392 F.2d 220 (6th Cir. 2004) ..............................................................................13

*In re Ford Motor Co. Sec. Litig.*,
   381 F.3d 563 (6th Cir. 2004) ...........................................................................6, 10

*In re Francesca's Holdings Corp. Sec. Litig.*,
   Nos. 13-cv-6882, 13-cv-7804 (RJS), 2015 WL 1600464 (S.D.N.Y.
   Mar. 31, 2015)....................................................................................................10

*Havenick* v. *Network Express, Inc.*,
   981 F. Supp. 480 (E.D. Mich. 1997) ..................................................13

*Helwig* v. *Vencor, Inc.*,
   251 F.3d 540 (6th Cir. 2001) ............................................................15

*J & R Mktg.* v. *Gen. Motors Corp.*,
   549 F.3d 384 (6th Cir. 2008) .......................................................6, 10

*Kalnit* v. *Eichler*,
   264 F.3d 131 (2d Cir. 2001) .............................................................14

*Knox* v. *Yingli Green Energy Holding Co.*,
   Nos. 2:15-cv-04003-ODW, 2:15-cv-04600-ODW (MRWx), 2016
   WL 6609210 (C.D. Cal. May 10, 2016) ...........................................13

*Konkol* v. *Diebold, Inc.*,
   590 F.3d 390 (6th Cir. 2009) ............................................................13

*Ley* v. *Visteon Corp.*,
   543 F.3d 801 (6th Cir. 2008) ............................................................14

*In re Miller Energy Res. Sec. Litig.*,
   No. 3:11-CV-386-TAV-CCS, 2014 WL 415730 (E.D. Tenn. Feb.
   4, 2014) ............................................................................................11

*Nelson* v. *Walsh*,
   No. 16-10405, 2017 WL 1212836 (E.D. Mich. Feb. 17, 2017) .........12

*In re Newell Rubbermaid Inc. Sec. Litig.*,
   No. 99 C 6853, 2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) ...........11

*Oran* v. *Stafford*,
   226 F.3d 275 (3d Cir. 2000) ...............................................................2

*Pension Fund Grp.* v. *Tempur-Pedic Int'l, Inc.*,
   614 F. App'x 237 (6th Cir. 2015) ........................................................6

*Police & Fire Ret. Sys. of City of Detroit* v. *SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009) ..................................................8

*PR Diamonds, Inc.* v. *Chandler*,
   364 F.3d 671 (6th Cir. 2004) ....................................................5, 14, 15

*Soo Line R.R. Co.* v. *St. Louis Sw. Ry. Co.*,
　　125 F.3d 481 (7th Cir. 1997) ............................................................................11

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
　　551 U.S. 308 (2007)............................................................................................4

*Waters* v. *Gen. Elec. Co.*,
　　No. 08 Civ. 8484 (RJS), 2010 WL 3910303 (S.D.N.Y. Sept. 29,
　　2010) ....................................................................................................................9

**Statutes**

Private Securities Litigation Reform Act of 1995 .................................................4, 5

## PRELIMINARY STATEMENT

The essential element in any viable "stock drop" case is a "significant stock price decline immediately following the announcement that reveals the fraud to the public." *D.E. & J. Ltd.* v. *Conaway*, 284 F. Supp. 2d 719, 749 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005). Yet, in the first line of their Opposition ("Opp."), Plaintiffs confirm that this putative "stock drop" case, though dressed up with hyperbole, invective and speculation, fails as a matter of law because Fiat Chrysler Automobiles N.V.'s ("FCA") stock price actually *increased* by 1.16%, from $6.92 to $7.00, on the claimed "curative" disclosure date. (Ex. 7.)

Plaintiffs open their Opposition by conceding that, stripped to its essence, "[t]his lawsuit challenges the 'streak'"—FCA US LLC's ("FCA US") reported 75-month "streak" of year-over-year monthly sales increases from April 2010 to June 2016. (Opp. at 1.) Trying to turn this "streak" into a securities fraud claim, Plaintiffs contend that, on July 26, 2016, "the market ultimately learned that FCA's streak was pure fabrication" (Compl. ¶ 10), when FCA US "shockingly . . . admitted that the Company's streak actually ended" three years earlier "*in September 2013*" (Opp. at 2) (emphasis added) (the "July 26, 2016 Release"). But, fatally for their Complaint, the market did not flinch at this supposedly "shocking" news, which occurred in the middle of trading on July 26. Instead, FCA's stock price increased.

If, as the Complaint alleges, "the market for FCA common stock was open and efficient" and "promptly digested current information regarding FCA from all publicly available sources" (Compl. ¶ 412-13), then it is incontrovertible that the challenged statements about the "streak" were immaterial as a matter of law. As Plaintiffs acknowledge, "[m]ateriality is about marketplace effects." (Opp. at 16 (citing *Helwig* v. *Vencor, Inc.*, 251 F.3d 540, 563 (6th Cir. 2001)).) Thus, "if a company's disclosure of information has no effect on stock prices, it follows that the information disclosed" "was immaterial as a matter of law." *Oran* v. *Stafford*, 226 F.3d 275, 282 (3d Cir. 2000).

Backed into a corner, Plaintiffs ignore the stock price *increase* on July 26, 2016 (the only relevant "curative" disclosure date) and instead point to stock price declines on January 14 and July 27, 2016. (Opp. at 20.) But neither of these declines helps Plaintiffs plug the gaping hole in their pleading: the January 14 decline followed news about a dealer lawsuit that said nothing about FCA US's sales "streak," let alone that this "streak" was "pure fabrication." And the July 27 price decline is a complete red herring because, as the Sixth Circuit has held, in an efficient market FCA's stock price would have reflected the information disclosed in the July 26, 2016 Release "immediately," not the next trading day.[1] *City of*

---

[1] FCA US issued the July 26, 2016 Release at 11:59 a.m. on July 26, 2016. (Ex. 8.) As of noon, FCA's shares were trading on the NYSE at $6.965 per share. (Ex.

*Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*, 399 F.3d 651, 676 (6th Cir. 2005) (material information is "immediately incorporated into stock prices"). That Plaintiffs contradict their own market efficiency allegations (Compl. ¶ 412-13) by pointing to an unrelated stock drop on July 27, 2016—which followed FCA's pre-market announcement of its quarterly earnings results—merely confirms that Plaintiffs are grasping at straws.

Nor should it be surprising that the market shrugged off the "news" on July 26, 2016 that FCA US's sales "streak" had ended in *September 2013*. Plaintiffs do not dispute that:

- Their Complaint does not challenge the accuracy of any item in any FCA US or FCA financial statement. In fact, Plaintiffs concede that the supposed false sales reporting misconduct, even if true, would have *no effect* on FCA's revenues or earnings, because "FCA recognizes revenue from the sale of a vehicle when that vehicle is shipped to a dealer," not when the dealer reports that vehicle as sold to an end customer. (Compl. ¶ 59.)

- If anything, FCA US *underreported* historical monthly vehicle sales. Applying the new sales reporting methodology, FCA US would have reported over 23,000 *more* vehicle sales than it had reported under the old methodology for the same five-year period (January 2011 to June 2016).

- Even under the new methodology, FCA US's year-over-year monthly sales increased "in 73 out of [those] 75 months." (Opp. at 21 n.10.)

Put simply, Plaintiffs allege no facts that would allow the Court to conclude that

---

7.) FCA's share price *rose* after the issuance of the July 26, 2016 Release, reaching $7.005 per share by the close of trading at 4:00 p.m. (*Id.*) On this motion, "[t]he Court may take judicial notice of well-publicized stock prices." *D.E. & J.*, 284 F. Supp. 2d at 749 n.26.

the challenged statements about the "streak" were material.  Without a stock price decline on July 26, 2016, when the truth was supposedly revealed to investors, Plaintiffs' materiality theory is hopelessly doomed.

Plaintiffs' Opposition also confirms their failure to plead particularized facts supporting a "strong inference" of scienter, as required by the Private Securities Litigation Reform Act of 1995 (the "Reform Act").  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd*., 551 U.S. 308, 314 (2007).  The lack of materiality "undercut[s]" any inference of scienter, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Waters Corp.*, 632 F.3d 751, 757 (1st Cir. 2011), and the alleged fraudulent scheme to "create the perception of growth" (Compl. ¶ 10) is not plausible, including because under its new methodology FCA US would have reported *more* sales, not fewer.

More fundamentally, Plaintiffs provide absolutely no well-pled facts connecting FCA US's alleged false sales reporting scheme to the sales "streak" at all.  Indeed, Plaintiffs all but concede that:

- In the only three months in which Plaintiffs allege any instances of false sales reporting (June, July and November 2015), FCA US reported *higher* vehicle sales under its new methodology than under the old methodology.

- Plaintiffs allege *no* instances of false sales reporting in the only two months (September 2013 and May 2016) in which FCA US's supposedly all important sales "streak" would have been interrupted under its new reporting methodology.

- There were simply too few unwinds—the supposed wrongful sales practice

-4-

that Plaintiffs allege—in September 2013 and May 2016 to have affected the sales "streak." *All* unwinds *for whatever reason* had a miniscule *0.06%* effect on FCA US's reported sales numbers over the 5-year period.  (Ex. 1.)

Plaintiffs' only response now to this fatal disconnect between FCA US's alleged sales reporting scheme and the sales "streak" is to conclusorily claim that this Court should not accept the "restated sales results" as "accurate" (Opp. at 3), but that speculation cannot substitute for particularized facts and, in any event, Plaintiffs' entire theory relies on the revised sales numbers incorporated in the Complaint, which may not be amended through their Opposition.

In short, in their effort to turn FCA US's change in its sales reporting methodology into securities fraud, Plaintiffs do not—and cannot—plead materiality and scienter as a matter of law.  As the Sixth Circuit has held, the "purpose" of the Reform Act was "to prevent harassing strike suits" by "screen[ing] out lawsuits having no factual basis."  *PR Diamonds, Inc.* v. *Chandler*, 364 F.3d 671, 700 (6th Cir. 2004).  In accordance with its gatekeeping responsibility, the Court should dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

## I. PLAINTIFFS' OPPOSITION CONFIRMS THAT THE CHALLENGED STATEMENTS WERE *NOT* MATERIAL.

Tellingly, Plaintiffs try to avoid the materiality issue altogether by contending that materiality should not be "resolved by the Court on a motion to dismiss."  (Opp. at 16.)  Not so.  In fact, courts in the Sixth Circuit routinely

-5-

dismiss securities fraud claims where, as here, plaintiffs have not adequately alleged that the challenged statements were material. *See, e.g., Pension Fund Grp.* v. *Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237, 245 (6th Cir. 2015) (affirming dismissal of statements as "immaterial as a matter of law"); *J & R Mktg.* v. *Gen. Motors Corp.*, 549 F.3d 384, 396 (6th Cir. 2008) (same); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570-71 (6th Cir. 2004) (same). This case is no different.

> **A.     FCA's Stock Price *Increase* Following the July 26, 2016 Release Demonstrates That the Challenged Statements Were Immaterial As a Matter of Law.**

Unable to dispute that on July 26, 2016, the date when the truth was revealed about the interruption in FCA US's sales "streak" in September 2013, FCA's stock price *increased* by 1.16%, from $6.92 to $7.00 (Ex. 7), Plaintiffs instead argue that they have established materiality because "on two occasions"— January 14, 2016 and July 27, 2016—"the market price of FCA dropped . . . in response to adverse news and market commentary concerning the reliability of the Company's U.S. sales data." (Opp. at 20.) Neither drop establishes materiality.

***January 14, 2016.*** Plaintiffs argue that "on January 14, 2016, the price of FCA common stock fell over 4% in response to the revelation that FCA-affiliated dealerships had alleged that the Company induced them to book fraudulent sales." (Opp. at 20.) But, as Plaintiffs' own Opposition confirms, "[t]his lawsuit challenges the 'streak'" (Opp. at 1); it has nothing to do with

-6-

statements regarding FCA US's "dealer lawsuit." Plaintiffs do not explain how the January 14 disclosure of that lawsuit (in which, Plaintiffs concede, FCA US vigorously *denied* the allegations) revealed to the market anything about the streak, let alone that it had been broken. Indeed, Plaintiffs allege the exact opposite: "[I]nvestors continued to believe that the streak was still alive and well" "through June 2016." (Compl. ¶ 152; *see* Opp. at 14.) Because nothing in the January 14 disclosure could have alerted the market that the streak was in doubt, much less that it had been broken in September 2013, any stock drop on that day is wholly insufficient to meet Plaintiffs' burden of adequately pleading the materiality of the sales streak. *See D.E. & J.*, 133 F. App'x at 1000-01 (plaintiff "has done nothing more than note that a stock price dropped after a [disclosure], never alleging that the market's acknowledgment of prior misrepresentations caused that drop").

*July 27, 2017.* Plaintiffs next argue that "on July 27, 2016, FCA common stock fell over 4% in response to the Company's disclosure that the streak had actually ended three years earlier." (Opp. at 20.) But, as Plaintiffs acknowledge (Opp. at 2), FCA US disclosed that information *the day before*, *i.e.*, in the July 26, 2016 Release, during market hours, and on that day FCA's stock price *increased* by 1.16%. Plaintiffs offer no explanation for why FCA's stock price did not plummet on July 26 if, as they allege, the market for FCA's stock was efficient and the July 26, 2016 Release revealed a supposedly "shocking[]" fraud,

*i.e.*, that FCA US's sales "streak" had ended nearly three years earlier.  (Opp. at 2.)

As the Sixth Circuit has held, in an efficient market, material information is

"*immediately* incorporated into stock prices."  *Monroe*, 399 F.3d at 676 (internal

quotation marks omitted) (emphasis added).  Thus, Plaintiffs' own allegations of

market efficiency doom their claims.  *See In re Compuware Sec. Litig.*, 386 F.

Supp. 2d 913, 919 (E.D. Mich. 2005) (dismissing on pleadings where plaintiff did

"not allege that a price decline immediately accompanied the . . . disclosure").

Moreover, FCA released its quarterly earnings at 7:22 a.m. on July 27

and convened an investor call at 7:30 a.m. to discuss those earnings with investors.

(Ex. 9.)  Plaintiffs make no attempt to show that the July 27 stock drop resulted

from an unexplained delayed reaction (wholly inconsistent with their market

efficiency allegations) to the previous day's "admission" about the streak, rather

than to a common market reaction to the quarterly earnings disclosures that were

released that morning.  This pleading failure is yet another fatal defect in their

materiality theory. *See Police & Fire Ret. Sys. of City of Detroit* v. *SafeNet, Inc.*,

645 F. Supp. 2d 210, 229 (S.D.N.Y. 2009) (plaintiffs failed to show "why the"

"disclosure they focus on caused the decline, as opposed to the simultaneous

disclosure of" non-fraud related news).

Bottom line, Plaintiffs acknowledge their claims challenge only the

sales streak.  (Opp. at 1.)  Thus, the only relevant disclosure is the July 26, 2016

Release.  None of the other disclosures referenced the "streak," much less disclosed that under the new methodology it would have had two interruptions.  On July 26, 2016, FCA's stock price *increased*, including *after* the publication of the July 26, 2016 Release.  The challenged statements about the streak, therefore, were not material *as a matter of law*.  As now-Justice Alito explained, "[i]n the context of an 'efficient' market, the concept of materiality translates into information that alters the price of the firm's stock."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).  Thus, "to the extent that information is not important to reasonable investors, it follows that its release will have a negligible effect on the stock price."  *Id.*  As one court correctly held, "[t]he [c]ourt cannot find, and [p]laintiffs have not cited, a single section 10b-5 case in which the plaintiff prevailed on a motion to dismiss when the stock price *increased* after an announcement revealing an alleged fraud."  *Waters* v. *Gen. Elec. Co.*, 2010 WL 3910303, at *8 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 447 F. App'x 229 (2d Cir. 2011).  The materiality inquiry ends here.

### B.   Plaintiffs' Other Materiality Arguments Are Legally Flawed.

Ignoring the market's indifference to news about the end of the sales "streak" three years before, Plaintiffs speculate that it is "not credible" that "investors would not have cared about a sales streak that was overstated in length by greater than 100%."  (Opp. at 21.)  But "speculation is insufficient to allow an

inference of materiality." *In re Francesca's Holdings Corp. Sec. Litig.*, 2015 WL 1600464, at *14 (S.D.N.Y. Mar. 31, 2015). Further, the facts lay waste to that claim. It is clear that investors *did not* view the July 26, 2016 Release as significant, because when it was disclosed that the streak would have ended in September 2013, "at month 40" (Opp. at 14), FCA's stock price *went up*.[2]

Plaintiffs also argue that, although "retail sales did not fall to the Company's bottom line," the challenged statements are material because "the market paid great attention to automakers' retail sales." (Opp. at 17.) But Plaintiffs' own assessment about "[t]he importance of the topic of the representation does not . . . automatically make it material." *J & R*, 549 F.3d at 396. The salient issue is whether investors would view the difference between 73 months of year-over-year sales growth in a 75-month period versus 75 consecutive months as "significantly alter[ing] the total mix of information," *Ford*, 381 F.3d at 570, particularly where (1) the number of retail sales by dealers has no bearing at all on FCA's revenues or financial statements (*i.e.*, the metrics securities investors care about), and (2) the total number of reported sales actually *increased* under FCA US's new methodology. As the market's actual indifference to the

---

[2] Tellingly, Plaintiffs do not cite a single financial analyst who changed a rating on FCA based on the July 26, 2016 Release, and a law professor quoted in the Opposition (at 17) rightly described the "streak" as "meaningless." (Ex. 6.)

"shocking" revelation about the interruption of the sales "streak" in September 2013 confirms, the answer is clearly "no."  *Cf. In re Newell Rubbermaid Inc. Sec. Litig.*, 2000 WL 1705279, at *9 (N.D. Ill. Nov. 14, 2000) ("Plaintiffs fail to explain how a reasonable investor . . . would have been at all affected by some slight shifting of revenues between years.").

Unable to refute that FCA US's revised methodology resulted in 23,000 *more* vehicle sales for January 2011 through June 2016, Plaintiffs resort to contradicting their own theory.  They now argue that FCA US's "restated results, reported in July and October 2016," "are not entitled to th[e] presumption" of being "true and accurate."  (Opp. at 22.)  This is nonsense.  Plaintiffs' Complaint is based entirely on the theory that the revised sales figures in the July 26, 2016 Release *were* correct, and revealed the falsity of the challenged sales "streak" statements.  The Complaint does not allege that the revised sales figures in the July 26, 2016 Release were inaccurate.  *See, e.g.*, *Soo Line R.R. Co.* v. *St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("a party is bound by what it states in its pleadings").  On the contrary, the July 26, 2016 Release, including the revised sales numbers, is incorporated by reference into the Complaint and thus deemed true for purposes of this motion.  *See In re Miller Energy Res. Sec. Litig.*, 2014 WL 415730, at *7 (E.D. Tenn. Feb. 4, 2014) ("court must accept" "as true" "documents incorporated into the complaint by reference").  And it is settled that Plaintiffs

"may not amend their complaint" through their Opposition.  *Nelson* v. *Walsh*, 2017 WL 1212836, at *1 n.4 (E.D. Mich. Feb. 17, 2017).  In any case, when all is said and done, the disclosure about the "streak" had no effect on FCA's stock price, and that incontrovertible fact alone requires dismissal of this action as a matter of law.

## II.   PLAINTIFFS OFFER NOTHING TO REMEDY THEIR FAILURE TO PLEAD PARTICULARIZED FACTS GIVING RISE TO A "STRONG INFERENCE" OF SCIENTER.

### A.   In Their Opposition, Plaintiffs Do Not Dispute the Fatal Disconnect Between Their False Sales Reporting Allegations and the Challenged Statements.

Plaintiffs' theory is that FCA US reported and then unwound sales in order to "inflate sales figures" to perpetuate the sales "streak."  (Compl. ¶¶ 10, 104.)  But there are *no* facts, let alone particularized ones, supporting that theory.  Plaintiffs do not dispute that they allege *no* instances of false sales reporting in the only two months in which the streak would have been broken under the new methodology.  Nor do Plaintiffs dispute that the false sales reporting conduct they allege all occurred in three months when the streak continued under either the old or the new methodology.  Thus, even assuming—contrary to the Complaint—that every single unwind corresponded to a false sale, those unwinds had *no* effect on the "streak" because there were just too few of them.  (ECF No. 39 at 15-17, 26.)

In the face of these unrebutted facts, of which this Court may take judicial notice, Plaintiffs argue that the Court should ignore Defendants'

"mathematical computations" because they rely on the revised sales numbers. (Opp. at 3, 22.) Plaintiffs do not explain how they allege any particularized facts connecting their claims of sporadic false sales reporting and the challenged statements about the "streak." "*Tellabs* requires *specific* facts" "known to Defendants" that "reflect[] the" alleged "scheme in such a way that" the falsity of the challenged statements "would have been obvious" to Defendants. *Konkol* v. *Diebold, Inc.*, 590 F.3d 390, 398 (6th Cir. 2009). Thus, Plaintiffs must "draw a specific nexus between the allegedly fraudulent statements and the facts upon which the allegation of fraud is dependent." *Havenick* v. *Network Express, Inc.*, 981 F. Supp. 480, 526 (E.D. Mich. 1997). That critical nexus is absent here: even if Defendants knew of the alleged sales practices, without a link between those practices and the "streak," there is no basis on which to infer that Defendants knew that the challenged statements were false. *See Fidel* v. *Farley*, 392 F.3d 220, 233 (6th Cir. 2004) (no "strong inference" of scienter from unrelated settlements).[3] It is irrelevant whether Plaintiffs alleged "actual knowledge of the fraudulent sales practices" (Opp. at 26-27), because this "knowledge" cannot demonstrate scienter.[4]

---

[3] *Knox* v. *Yingli Green Energy Holding Co.*, 2016 WL 6609210, at *16 (C.D. Cal. May 10, 2016) ("unrelated" wrongdoing insufficient to plead scienter); *Bricklayers* v. *Hecla Mining Co.*, 2013 WL 5423875, at *8 (D. Idaho Sept. 26, 2013) (same).

[4] Plaintiffs do not point to any fact suggesting that Mr. Palmer or Marchionne directly knew of false sales. (*See* ECF No. 39 at 29 n.10.) Plaintiffs baldly assert

-13-

### B.     Plaintiffs' Remaining Scienter Theories Do Not Raise Any Inference of Scienter, Much Less the Required "Strong" One.

***Generic Motive Arguments.***     Plaintiffs claim that Defendants' purported motives support scienter citing the need to maintain the "streak" for FCA "to raise capital" and "attract a merger partner" and Mr. Bigland's ability to "parlay" his success into "more lucrative positions."  (Opp. at 30-32.)  But the Sixth Circuit has rejected such unexceptional motives as not pleading scienter.[5]

***"Restated" Sales Figures.***     Plaintiffs also argue that scienter is supported because "Defendants restated more than five years of retail sales." (Opp. at 37.)  But FCA US made no restatement.  It made no change in any financial statement item; it simply adopted a revised and improved reporting

---

that Mr. Bigland he "engaged in 'unnatural acts'" at FCA Canada.  (Opp. at 27.) But the Complaint alleges no such thing.  (Compl. ¶¶ 128-31.)  Plaintiffs also argue that Mr. Bigland authorized marketing funds to encourage false sales, based on the *speculation* of a confidential witness that a "directive came from National" (*id.* ¶¶ 112-14).  But "mere speculation" about "pressure from corporate" does not suffice to allege scienter.  *In re Diebold Sec. Litig.*, 2008 WL 3927467, at *7 (N.D. Ohio Aug. 22, 2008), *aff'd*, 590 F.3d 390 (6th Cir. 2009).  Similarly, knowledge of isolated instances of "unnatural acts," which Mr. Bigland tried to stop (Compl. ¶ 378), and an internal investigation that found false sales (Opp. at 29) *undercut* any inference of scienter.  (ECF No. 39 at 30-31)  Finally, that "Defendants *had access to*" "sources that contained detailed [sales] information" (Opp. at 34) (emphasis added) does not allege scienter because—even ignoring that Plaintiffs only speculate that Defendants accessed these systems—Plaintiffs do not explain how any data in them showed that the supposed false sales affected the "streak."

[5] *See*, *e.g.*, *PR Diamonds*, 364 F.3d at 690; *Ley* v. *Visteon Corp.*, 543 F.3d 801, 813-14 (6th Cir. 2008); *Kalnit* v. *Eichler*, 264 F.3d 131, 141 (2d Cir. 2001).

methodology for sales to end customers and in order to be transparent disclosed what its prior sales would have been under that new methodology.[6]   *Cf. PR Diamonds*, 364 F.3d at 684-86.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' opening brief, the Court should dismiss the Complaint in its entirety, with prejudice.

August 4, 2017                              Respectfully submitted,

Patrick G. Seyferth
Roger P. Meyers                           /s/ Robert J. Giuffra, Jr.
Jessica Vartanian Currie                  Robert J. Giuffra, Jr.
BUSH SEYFERTH & PAIGE PLLC                William B. Monahan
                                          Darrell S. Cafasso
                                          SULLIVAN & CROMWELL LLP

*Counsel for Defendants Fiat Chrysler Automobiles N.V.,*
*Sergio Marchionne and Richard K. Palmer*

Keefe A. Brooks                           /s/ David A. Shargel
Michael T. Price                          Paul Shechtman
BROOKS WILKINS SHARKEY                     Rachel B. Goldman
& TURCO, PLLC                             David A. Shargel
                                          BRACEWELL LLP

*Counsel for Defendant Reid Bigland*

---

[6]  Plaintiffs claim that the dealer lawsuit and government investigations "contribute[]" to scienter.  (Opp. at 33.)  But "an ancillary lawsuit" is only probative of scienter where it is "quick[ly] settle[d]."  *Helwig*, 251 F.3d at 552. The dealer lawsuit and government investigations have not "quick[ly] settle[d]."

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2017, I caused Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Consolidated Class Action Complaint to be filed with the Clerk of the Court and served upon counsel of record through the Court's ECF filing system.

/s/ Darrell S. Cafasso
Darrell S. Cafasso (N.Y. 4147849)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
cafassod@sullcrom.com