# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CARL PALAZZOLO and ALBERT FERRANDI, Individually and On Behalf of All Others Similarly Situated, | Case No. 4:16-cv-12803-LVP-SDD |
| Plaintiffs, | **CLASS ACTION** |
| v. | Hon. Linda V. Parker<br>District Court Judge |
| FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, and REID BIGLAND, | Stephanie Dawkins Davis<br>Magistrate Judge |
| Defendants. | |

## LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

Lead Plaintiffs, Carl Palazzolo and Albert Ferrandi, hereby move this Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of Orders: (i) granting final approval of the proposed Settlement, as set forth in the Stipulation and Agreement of Settlement dated January 31, 2019; (ii) approving the proposed plan of allocation for allocating the net proceeds of the Settlement to eligible Settlement Class Members; and (iii) certifying the Settlement Class for purposes of effectuating the Settlement.[1] In support, Lead Plaintiffs rely upon their Memorandum of Law in Support of this Motion, the Joint Declaration of Stacey M. Kaplan and Sharon S. Almonrode and Exhibits, oral argument of counsel, and such other and further material as the Court may request and consider.

Dated: May 1, 2019

Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive
Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com

---

[1] A proposed Judgment Approving Class Action Settlement and proposed Order Approving Plan of Allocation of Net Settlement Fund granting the requested relief will be submitted with Lead Plaintiffs' reply papers on May 29, 2019, after the deadlines for objecting to the Settlement and requesting exclusion from the Settlement Class have passed.

**KESSLER TOPAZ MELTZER**
 **& CHECK, LLP**
Gregory M. Castaldo
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
gcastaldo@ktmc.com

– and –

Stacey M. Kaplan
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  (415) 400-3000
Facsimile:  (415) 400-3001
skaplan@ktmc.com

*Counsel for Lead Plaintiffs and the
Settlement Class*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CARL PALAZZOLO and ALBERT FERRANDI, Individually and On Behalf of All Others Similarly Situated, | Case No. 4:16-cv-12803-LVP-SDD |
| Plaintiffs, | **CLASS ACTION** |
| v. | Hon. Linda V. Parker District Court Judge |
| FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, and REID BIGLAND, | Hon. Stephanie Dawkins Davis Magistrate Judge |
| Defendants. | |

# MEMORANDUM OF LAW IN SUPPORT OF
# LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED
# CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION.....................................................................1

II.   ARGUMENT .........................................................................5

      A.    The Settlement Readily Meets the Standard for Final Approval.........5

      B.    Both the Rule 23(e)(2) Factors and the Sixth Circuit Final
            Approval Factors Support Approval of the Settlement........................7

            1.    The Relief Provided to the Settlement Class Is Adequate..........7

            2.    Lead Plaintiffs and Lead Counsel Adequately
                  Represented the Settlement Class ........................................9

            3.    The Settlement Was Negotiated at Arm's-Length...................10

            4.    The Complexity, Costs, Risks, and Delay of Further
                  Litigation, Trial, and Appeal......................................11

                  a)    The Significant Costs and Delay of Further
                        Litigation........................................................12

                  b)    Risks to Continued Litigation.........................................13

            5.    Extent of Discovery Completed and Stage of Proceedings......15

            6.    The Experience and Views of Counsel....................................16

            7.    Reaction of the Settlement Class to the Settlement to
                  Date .................................................................16

            8.    Public Interest Favors Approval of the Settlement...................17

            9.    The Other Factors Set Forth in Rule 23(e)(2) Support
                  Final Approval of the Settlement.............................................18

                  a)    The Proposed Method of Processing Claims and
                        Distributing Settlement Proceeds Is Effective...............18

                  b)    Requested Attorneys' Fees and Expenses Are Fair
                        and Reasonable .............................................................19

                  c)    The Settlement Treats Settlement Class Members
                        Equitably.......................................................20

III.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
      ADEQUATE ..........................................................................20

IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..........22

i

V.     NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 ..........23

VI.    CONCLUSION ...........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arledge v. Domino's Pizza, Inc.*,
   2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ............................................. 10-11

*In re Canadian Superior Sec. Litig.*,
   2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011)....................................................11

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ...........................................................6, 7, 22

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...............................................................................14

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................11

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005).............................................................................................21

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ..............................................................................23

*Griffin v. Flagstar Bancorp, Inc.*,
   2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ...........................................7, 20

*Hicks v. Morgan Stanley & Co.*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)......................................................8

*IUE-CWA v. GMC*,
   238 F.R.D. 583 (E.D. Mich. 2006) ......................................................................6

*Leonhardt v. ArvinMeritor, Inc.*,
   581 F. Supp. 2d 818 (E.D. Mich. 2008) .......................................................... 5-6

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) (Parker, J.) ..........................................*passim*

*In re Nationwide Fin. Servs. Litig.*,
   2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ..................................... 6, 6-7, 16

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................11

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006) ..................................................................12, 15

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ...................................................19

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016) ................................................ 7, 8, 12-13

*In re Regions Morgan Keegan Secs., Derivative, & ERISA Litig.*,
    2016 WL 8290089 (W.D. Tenn. Aug. 2, 2016)....................................................19

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ....................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................17

*UAW v. GMC*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006)....................................................16

*UAW v. GMC*,
    497 F.3d 615 (6th Cir. 2007) .....................................................................*passim*

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................................16

**Statutes**

15 U.S.C. § 78u-4(a) ...........................................................................................23, 24

15 U.S.C. § 78u-4(e) ...............................................................................................21

**Other Authorities**

Fed. R. Civ. P. 23 ..............................................................................................*passim*

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Whether the Court should approve the proposed settlement of this securities class action, which involves payment of $14,750,000 in cash for the benefit of the Settlement Class, as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

2. Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

3. Whether the Court should finally certify the Action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the Settlement only.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

### <u>Rules</u>

Fed. R. Civ. P. 23

### <u>Cases</u>

*UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007)

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226 (E.D. Mich. 2016)

Lead Plaintiffs, Carl Palazzolo and Albert Ferrandi ("Lead Plaintiffs"), respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), requesting: (i) final approval of the proposed settlement (the "Settlement"); (ii) approval of the Plan of Allocation; and (iii) certification of the Settlement Class for purposes of effectuating the Settlement.[1]

## I.    INTRODUCTION

Subject to this Court's final approval, Lead Plaintiffs, through their counsel, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and The Miller Law Firm, P.C. ("Miller Law") (together, "Lead Counsel"), have negotiated a Settlement for $14,750,000 in cash in exchange for the dismissal of all claims brought in this Action with Defendants FCA, Richard K. Palmer ("Palmer"), and Reid Bigland ("Bigland") (collectively, "Signatory Defendants"). As described below and in the accompanying joint declaration of Stacey M. Kaplan and Sharon S. Almonrode (the "Joint Declaration" or "Joint Decl."), the Settlement is an excellent result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks. Here, the Settlement represents between

---

[1]    The Settlement Class consists of all persons and entities who purchased or otherwise acquired Fiat Chrysler Automobiles N.V ("FCA" or the "Company") common stock on a U.S. Exchange between November 3, 2014 and July 26, 2016, inclusive, and were damaged thereby. Certain persons are excluded from the Settlement Class as provided in ¶ 1(mm) of the Stipulation and Agreement of Settlement (ECF No. 66-2) (the "Stipulation"). Capitalized terms not defined herein have the same meanings as set forth in the Stipulation. Unless otherwise indicated, internal citations and quotations have been omitted and emphasis has been added.

approximately 10% and 25% of the Settlement Class's *maximum* recoverable damages as estimated by Lead Plaintiffs' damages expert—a substantial result when compared to the median securities class action settlement.[2]

As described below and in the Joint Declaration, Lead Plaintiffs' decision to settle the Action was well-informed by an extensive investigation, hard-fought litigation by experienced counsel (including substantial discovery efforts), and protracted arm's-length negotiations supervised by an experienced mediator, the Honorable Daniel Weinstein (Ret.) ("Judge Weinstein"). While Lead Plaintiffs believe that their claims are meritorious, they also recognize that, in the absence of a settlement, they faced substantial risks to obtaining any recovery for the Settlement Class—let alone a recovery greater than that afforded by the Settlement.

In reaching the Settlement, Lead Plaintiffs and Lead Counsel carefully considered the risks of continued litigation. Notably, the Settlement was reached just days before Lead Plaintiffs' motion for class certification was due to be filed—a litigation milestone that carried significant risks for both sides. Moreover, had the Action continued, Lead Plaintiffs would face serious challenges to establishing both

---

[2]      *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements - 2018 Review and Analysis*, Cornerstone Research, Figure 5 (2019), www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis (reporting that in 2018, the median securities class action settlement as a percentage of estimated damages was 9.9% for cases with estimated damages between $25-$74 million and 4.9% for cases with estimated damages between $75-$149 million).

2

liability and damages. For example, Defendants would have strenuously argued—as they did throughout this litigation—that even if some isolated false sales did occur during the Class Period, they were entirely immaterial because: (i) they had no impact on the sales streak at issue in this litigation; (ii) they constituted just 0.04% of overall Company sales; and (iii) when they were disclosed, the Company's stock price actually increased. Joint Decl., ¶¶ 100-01. While Lead Plaintiffs successfully opposed these arguments at the pleading stage, they faced a heavier burden at summary judgment and trial, and there was no guarantee that their arguments would resonate with a jury. *Id.* ¶ 102. Relatedly, Defendants would have continued to assert at summary judgment and/or at trial that Lead Plaintiffs cannot prove that the stock price declines on the alleged corrective disclosure dates are sufficiently related to Defendants' alleged misstatements for purposes of loss causation. *Id.* ¶¶ 108-12. These risks, and others, underscore the adequacy of the Settlement obtained here.

The Court preliminarily approved the Settlement, and provisionally certified the Settlement Class for purposes of effectuating the Settlement, by Order dated February 20, 2019 (the "Preliminary Approval Order"). ECF No. 67. By the same Order, the Court approved the process by which Settlement Class Members would receive notice of the Settlement and submit claims, objections, or requests for exclusion. To date, while the deadline to submit objections and requests for exclusion from the Settlement Class has not yet passed, no Settlement Class Member

has objected to the Settlement or Plan of Allocation (Joint Decl., ¶¶ 12, 118), and

the Court-authorized Claims Administrator, JND Legal Administration ("JND"), has

received just four requests for exclusion. *See* Declaration of Luiggy Segura ("Segura

Decl."), ¶ 19 (attached as Exhibit 3 to the Joint Declaration).[3]

   For these reasons, Lead Plaintiffs submit that the Settlement readily meets the

standards for final approval under Rule 23 and is a fair, reasonable, and adequate

result for the Settlement Class. Accordingly, Lead Plaintiffs respectfully request that

the Court grant final approval of the Settlement. Lead Plaintiffs also respectfully

submit that the proposed Plan of Allocation of the Net Settlement Fund is a fair and

reasonable method for distributing the Net Settlement Fund and should be approved.

Finally, Lead Plaintiffs request that the Court finally certify the Settlement Class for

purposes of effectuating the Settlement pursuant to Rules 23(a) and (b)(3), as

nothing has changed to alter the propriety of the Court's provisional certification of

the Settlement Class in its Preliminary Approval Order. *See* ECF No. 67, ¶¶ 1-3.[4]

---

[3]   Pursuant to the Preliminary Approval Order, requests for exclusion and objections must be received by May 15, 2019. Should any requests for exclusion or objections be received after the date of this submission, Lead Counsel will address them in their reply papers to be filed on or before May 29, 2019.

[4]   Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 66), and the reasons supporting certification of the Settlement Class set forth therein, are incorporated herein by reference.

## II.    ARGUMENT

### A.    The Settlement Readily Meets the Standard for Final Approval

Rule 23(e) requires judicial approval for any settlement of class action claims.

Where, as here, a settlement is binding on class members, the Court may approve it

"only after a hearing and only on finding that it is fair, reasonable, and adequate."

Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair, reasonable, and

adequate, Rule 23(e)(2) directs the Court to examine whether:

> (A) the class representatives and class counsel have adequately
> represented the class; (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness
> of any proposed method of distributing relief to the class, including the
> method of processing class-member claims; (iii) the terms of any
> proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Consistent with Rule 23, courts in this Circuit consider the following seven

factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely
> duration of the litigation; (3) the amount of discovery engaged in by the
> parties; (4) the likelihood of success on the merits; (5) the opinions of
> class counsel and class representatives; (6) the reaction of absent class
> members; and (7) the public interest.

*UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007); *N.Y. State Teachers' Ret. Sys. v.*

*Gen. Motors Co.*, 315 F.R.D. 226, 235 (E.D. Mich. 2016) (Parker, J.). In its analysis,

the Court "may choose to consider only factors that are relevant to the settlement

5

and may weigh particular factors according to the demands of the case." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 832 (E.D. Mich. 2008).[5]

The determination of whether a settlement is fair, reasonable, and adequate "is committed to the sound discretion of the district court." *IUE-CWA v. GMC*, 238 F.R.D. 583, 594 (E.D. Mich. 2006). In making this determination, the Court must consider "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). "[W]hile courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009). "Thus, in determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a 'range of reasonableness,' . . . and in the end, the Court's determinations are no more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Leonhardt*, 581 F. Supp. 2d

---

[5]     The December 1, 2018 amendments to Rule 23(e)(2) were not intended to "displace any factor" used by courts to assess final settlement approval, but rather to focus on core substantive and procedural concerns to guide the approval decision. Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. The factors in amended Rule 23(e)(2) are entirely consistent with the factors used by the Sixth Circuit to assess final settlement approval and both sets of factors are addressed in the sections below.

at 831 and *Officers for Justice v. Civil Serv. Com. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). In determining whether to approve a settlement, courts should also recognize "the federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632.[6]

As demonstrated herein and in the Joint Declaration, the Settlement readily satisfies each of the factors enumerated in Rule 23(e)(2) and traditionally considered by courts in the Sixth Circuit, furthers the favored public policy goal of resolving securities class action claims, and warrants this Court's final approval.

### B.   Both the Rule 23(e)(2) Factors and the Sixth Circuit Final Approval Factors Support Approval of the Settlement

#### 1.   <u>The Relief Provided to the Settlement Class Is Adequate</u>

A key factor that courts consider in assessing approval of a class action settlement is plaintiff's likelihood of success on the merits balanced against the relief offered in the settlement. *UAW*, 497 F.3d at 631. To that end, "[t]he propriety of a settlement must be assessed as a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery)." *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016). Here, the Settlement provides for $14,750,000—a substantial

---

[6]      *See also Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("the law favors the settlement of class action lawsuits"); *Cardizem*, 218 F.R.D. at 530 ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable . . . .").

portion (i.e., 10% to 25%) of *maximum* recoverable damages. Joint Decl., ¶ 11. This result far exceeds the median securities class action recovery. *See supra* note 2; *Gen. Motors*, 315 F.R.D. at 238 (the "Settlement represents approximately 11% to 25% of [maximum possible damages]. This is a very favorable recovery compared to the approved settlements in other securities fraud actions.").[7]

In addition to representing a substantial portion of the Settlement Class's damages, the result achieved is also significant in light of the risks to further litigation and the possibility of obtaining less than the Settlement Amount, or no recovery at all. While Lead Plaintiffs are confident in the merits of their claims and believe that they could have ultimately prevailed against Defendants, they recognize the numerous risks that would accompany further litigation of these claims. Joint Decl., ¶¶ 95-113; *see infra* Section II.B.4. As a result, the relief provided to the Settlement Class is more than adequate since "there was a very real risk of complete non-recovery, and the ratio of actual recovery to best-possible recovery is, at the least, above average." *Polyurethane Foam*, 168 F. Supp. 3d at 1001.

---

[7]    Courts have found much lower settlement percentages adequate. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (settlement representing 3.8% of damages was "within the range of reasonableness . . ."); *Polyurethane Foam*, 168 F. Supp. 3d at 1001 ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").

**2.** **Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class**

Final approval of the Settlement is also warranted under Rule 23(e)(2)(A) because Lead Plaintiffs and Lead Counsel "have adequately represented the class." Since their appointment as Lead Plaintiffs in January 2017, Messrs. Palazzolo and Ferrandi have actively monitored and engaged in the prosecution and resolution of the Action on behalf of the Settlement Class. To this end, Lead Plaintiffs regularly communicated with Lead Counsel on litigation strategy and case developments, reviewed significant Court filings, and conferred with Lead Counsel throughout the Parties' settlement negotiations. *See* Declarations of Carl Palazzolo and Albert Ferrandi (attached as Exhibits 1 and 2, respectively, to the Joint Declaration). In addition, Lead Plaintiffs—investors who purchased FCA common stock during the Class Period at artificially inflated prices and suffered damages when the truth was disclosed—have claims that are typical of other Settlement Class Members and their interests are aligned. *See UAW*, 497 F.3d at 626 (representation adequate where class members' "legal interests parallel the named representatives' interests").

Lead Counsel have also adequately represented the Settlement Class. As detailed in the Joint Declaration, Lead Counsel actively litigated this Action for over two years, undertaking a substantial investigation, and then engaging in hard-fought motion practice, extensive and hotly-contested discovery, and protracted settlement negotiations. Joint Decl., ¶¶ 6, 26-93. With the knowledge gleaned from these

9

efforts, Lead Counsel carefully considered the strengths and weaknesses of the claims asserted and the risks of further litigation when agreeing to resolve the Action. Lead Counsel firmly believe the Settlement represents an excellent recovery in the best interests of the Settlement Class. *See UAW*, 497 F.3d at 626 (finding lead counsel's representation adequate because counsel "was willing to, and indeed did, commit substantial resources . . . to representing the class") (alteration in original).

### 3.   The Settlement Was Negotiated at Arm's-Length

Rule 23(e)(2)(B) and the first *UAW* factor—the nature of the negotiations and the risk of fraud or collusion—also support final approval because the Settlement was reached only after arm's-length negotiations facilitated by an experienced and well-respected mediator. Joint Decl., ¶¶ 89-93. Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *Gen. Motors*, 315 F.R.D. at 236. Here, the Parties' settlement negotiations were extensive, and included the determined assistance of an experienced mediator. Joint Decl., ¶ 89. It was only after full briefing and presentations, exchange of expert analyses, and months of discussions resulting in a mediator's proposal that the Parties were ultimately able to reach an agreement. *Id*. ¶¶ 89-91. As such, the risk that the Settlement was the product of collusion is effectively non-existent. *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018)

("participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion . . . .").[8]

### 4.    The Complexity, Costs, Risks, and Delay of Further Litigation, Trial, and Appeal

Rule 23(e)(2)(C)(i) and the second *UAW* factor further support final approval of the Settlement, as "[c]ourts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) ("[T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation"). As discussed below, if the Action continued, the Settlement Class faced protracted delays, substantial litigation costs, and significant risks. *See also* Joint Decl., ¶¶ 95-113. This is particularly true for securities class actions such as this one, which must meet the demanding requirements of the Private Securities Litigation

---

[8]    Indeed, many courts have afforded a *presumption* of fairness and reasonableness of a settlement agreement where, as here, that agreement was the product of non-collusive, arm's-length negotiations. *See, e.g., In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) ("a strong presumption of fairness attaches because the settlement was reached by experienced counsel after arm's length negotiations"); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").

Reform Act of 1995 (the "PSLRA"). *See Gen. Motors.*, 315 F.R.D. at 236 ("The issues asserted in this PSLRA class action raise many complex issues . . . . Litigating this action would have required substantial additional time and expense.").

### a) The Significant Costs and Delay of Further Litigation

The Parties were deep into document discovery when the Settlement was reached. Joint Decl., ¶¶ 43-82. Barring settlement, continued litigation of the Action—through additional fact discovery, expert discovery, class certification briefing, dispositive motion practice, pre-trial preparation, and post-trial appeals— would have undoubtedly been a long and expensive endeavor. *See Gen. Motors*, 315 F.R.D. at 236 (approving settlement where further litigation would have been "extensive" and "protracted"). In contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class without exposing Settlement Class Members to the risk, expense, and delay of continued litigation. *See id.* ("As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement."); *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) ("Consideration of the possible expense, duration, and complexity of this litigation also weighs in favor of the proposed settlements.").

12

### b)    Risks to Continued Litigation

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Polyurethane Foam*, 168 F. Supp. 3d at 995 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Lead Plaintiffs faced significant risks to establishing Defendants' liability if the Action continued through summary judgment and trial. *First*, Lead Plaintiffs faced significant challenges to proving that Defendants made any materially false or misleading statements. Joint Decl., ¶¶ 100-02. Defendants have steadfastly maintained that even if Lead Plaintiffs could prove that they engaged in a scheme to falsify reported U.S. vehicles sales, that scheme had no impact on the sales streak at issue and a very minimal impact on sales generally. *Id.* Lead Plaintiffs would bear a much heavier burden on this issue at summary judgment and trial, and it is entirely possible that Defendants' arguments that any false sales were immaterial could have resonated with a jury.

*Second*, Lead Plaintiffs faced significant hurdles in proving that Defendants knew or, at a minimum, recklessly disregarded that their statements regarding FCA's streak were false. *Id.* ¶¶ 103-07. More specifically, Defendants would have argued that any false sales were undertaken by Business Center-level employees to meet their own bonus targets, and there is no evidence that the Company's senior

13

management knew that they were occurring—much less that they rendered any statements about the streak false. *Id.* ¶ 105. While Lead Plaintiffs believe strongly that their scienter allegations are meritorious, there is no guarantee that the Court or the jury would agree.

*Third*, Lead Plaintiffs faced formidable challenges with respect to proving loss causation and damages. Joint Decl., ¶¶ 108-13. Defendants would certainly have continued to assert at summary judgment and/or at trial that Lead Plaintiffs are unable to link stock declines on corrective disclosure dates to any alleged misstatements regarding the streak. *Id.* ¶ 111. For example, Defendants would have argued the July 27, 2016 stock drop was caused by a quarterly earnings release that morning, not the July 26, 2016 disclosure regarding the streak. *Id.* Likewise, Defendants would have argued that the July 18, 2016 stock drop was not statistically significant, and so could not be reliably attributed to the alleged corrective disclosure that day. *Id.* ¶ 110. Resolution of these issues would hinge upon extensive expert discovery and testimony. Thus, "establishing damages at trial would lead to a battle of experts . . . with no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).

*Fourth*, Lead Plaintiffs faced significant risks with respect to class certification. For instance, Defendants would have argued a lack of "price impact" because the alleged misstatements did not affect the price of FCA stock. Joint Decl.,

¶¶ 97-99. Acceptance of these arguments by the Court could potentially defeat class certification, narrow the certified class, and/or greatly limit recoverable damages. *Id.*

If the Settlement is approved, the Settlement Class will receive a substantial recovery without undertaking these risks, and others, which weighs strongly in favor of the Settlement. *New Eng. Health Care*, 234 F.R.D. at 631 ("If Plaintiffs were to continue to litigate these cases, they face substantial risks both at summary judgment and at trial in establishing liability and damages.").

### 5.    Extent of Discovery Completed and Stage of Proceedings

"The relevant inquiry with respect to [the third *UAW*] factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *Gen. Motors*, 315 F.R.D. at 236. As detailed in the Joint Declaration, during the course of this Action, Lead Counsel spent significant time and resources analyzing and litigating the legal and factual issues of this case, including *inter alia*: (i) conducting a wide-ranging legal and factual investigation; (ii) drafting a detailed amended complaint; (iii) opposing Defendants' motion to dismiss; (iv) engaging in extensive and hotly-contested discovery, including the review and analysis of more than one million pages of documents produced by FCA; (v) consulting with experts; and (vi) engaging in a hard-fought negotiation process facilitated by Judge Weinstein, including briefing, presentations, and expert analysis. Joint Decl., ¶¶ 6, 26-93. As a

15

result, "by the time the Settlement was reached, [Lead Plaintiffs and Lead Counsel] had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement." *Gen. Motors*, 315 F.R.D. at 237.

### 6. The Experience and Views of Counsel

The fifth *UAW* factor also supports the Settlement, as courts recognize that the opinion of experienced and knowledgeable counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). Lead Counsel—who have extensive experience prosecuting securities and other complex class actions, *see* Exhibits 4 and 5 to the Joint Declaration—are intimately familiar with the facts and legal issues involved in the Action and firmly believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Likewise, Defendants were represented by highly experienced and skilled counsel who vigorously defended their clients. Under these circumstances, Lead Counsel's opinion that the proposed Settlement is fair "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. GMC*, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006).

### 7. Reaction of the Settlement Class to the Settlement to Date

"In considering a class action settlement, the Court should also look to the reaction of the class members." *Nationwide*, 2009 WL 8747486, at *7. As of

16

April 30, 2019, JND has disseminated over 96,500 copies of the Notice Packet to potential Settlement Class Members and nominees. Segura Decl., ¶ 12. The deadline for Settlement Class Members to object to the Settlement, or to request exclusion from the Settlement Class, is May 15, 2019. *Id*. ¶ 18; Ex. A. To date, there have been no objections (Joint Decl., ¶¶ 12, 118) and just four requests for exclusion. Segura Decl., ¶ 19. *See Gen. Motors*, 315 F.R.D. at 241 ("the small number of objections received from absent Class members . . . weigh in favor of approving the Settlement"). The Settlement also has the full support of Lead Plaintiffs. *See* Palazzolo Decl., ¶ 6; Ferrandi Decl., ¶ 6.

### 8.   Public Interest Favors Approval of the Settlement

The final *UAW* factor strongly supports this Settlement. As noted above, the Sixth Circuit recognizes "the federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632. The Settlement furthers this policy and promotes judicial efficiency; it resolves at once the claims of the entire Settlement Class of aggrieved shareholders, and ends this protracted and contentious litigation, avoiding further years of litigation in this Court or in the Court of Appeals.

The Supreme Court has also recognized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). This Settlement furthers that public policy by providing a substantial

recovery (and potentially the only recovery in connection with the allegations in this Action) to a large class of shareholders.

**9.    The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval of the Settlement**

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Rule 23(e)(2)(C)(ii), (iii), and (iv); Rule 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

**a)    The Proposed Method of Processing Claims and Distributing Settlement Proceeds Is Effective**

If the Settlement is approved, the claims of Settlement Class Members will be processed and proceeds of the Settlement will be distributed pursuant to a method that is standard in securities class actions and is routinely found to be effective. The Court-authorized Claims Administrator, JND, will review and process all claims received, provide claimants with an opportunity to cure any deficiency in their claim or request judicial review of the denial of their claim, and will ultimately mail or wire claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, *see infra* Section III. *See, e.g.*, *Gen. Motors*, 315 F.R.D. at

233-34, 245 (granting approval of settlement with nearly identical distribution process).

### b) Requested Attorneys' Fees and Expenses Are Fair and Reasonable

Lead Counsel have filed a Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses concurrently herewith (the "Fee Motion"), which is incorporated by reference. As detailed therein, Lead Counsel are requesting an attorneys' fee award of 30% of the Settlement Fund, which is consistent with attorneys' fee percentages approved in complex class actions such as this. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *18 (E.D. Mich. Dec. 20, 1996) (recognizing acceptable range of fees to be 20% to 50% of the common fund); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, *19 (E.D. Mich. Dec. 13, 2011) ("the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions"); *see also In re Regions Morgan Keegan Secs., Derivative, & ERISA Litig.*, 2016 WL 8290089, at *8 (W.D. Tenn. Aug. 2, 2016) (noting "[d]istrict courts in the Sixth Circuit have often approved thirty percent fees").

The Fee Motion also includes a request for reimbursement of $255,764.05 in typical costs and expenses incurred by Lead Counsel in prosecuting this Action, and reimbursement of Lead Plaintiffs' costs related to their representation of the Settlement Class in an aggregate amount of $10,000. Joint Decl., ¶¶ 143, 150.

19

**c)    The Settlement Treats Settlement Class Members Equitably**

Finally, the proposed Settlement treats all Settlement Class Members equitably relative to one another. As discussed below in Section III, the Net Settlement Fund will be distributed among all Settlement Class Members in accordance with the Plan of Allocation, which provides a fair and equitable method of allocation.[9] There is no preferential treatment for any member of the Settlement Class. Lead Plaintiffs also will receive a recovery based on the same formula under the Plan of Allocation (other than any Court-approved reimbursement of costs related to their representation of the Settlement Class as permitted by the PSLRA).

## III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *Griffin*, 2013 WL 6511860, at *7. Here, the proposed Plan of Allocation ("Plan"), which was developed in consultation with Lead Plaintiffs' damages expert, is a fair and reasonable method for allocating the Net Settlement Fund among Settlement Class Members. Joint Decl., ¶ 121. The Plan will equitably distribute the Net Settlement

---

[9]    Rule 23(e)(2)(C)(iv) asks the Court to consider any additional agreements made by the Parties in connection with the Settlement. The Stipulation (and its related exhibits) is the only agreement made by the Parties in connection with the Settlement.

Fund to Settlement Class Members who suffered losses as a result of the alleged wrongdoing, as opposed to losses caused by market or industry factors. *Id.* ¶ 120. The Plan incorporates a thorough economic analysis of the price movement in FCA stock during the Class Period, and the decreases in the price of FCA stock in reaction to disclosures that allegedly corrected the alleged misrepresentations. *Id.* ¶ 121.

Under the Plan, a Recognized Loss Amount will be calculated for each share of FCA common stock purchased or otherwise acquired on a U.S. Exchange during the Class Period that is listed in a Claimant's Claim Form and for which adequate documentation is provided. Joint Decl., ¶ 122. The calculation of a Recognized Loss Amount (and ultimately, a Claimant's "Recognized Claim") will depend upon several factors, including the date(s) when the Claimant purchased or acquired his, her, or its FCA common stock during the Class Period, and whether such stock was sold and if so, when and at what price. *Id.*[10]

The Claims Administrator, JND, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund by dividing the Authorized Claimant's Recognized Claim (i.e., the sum of a claimant's Recognized Loss Amounts as

---

[10]     Pursuant to the Plan, in order to have a loss, the FCA common stock purchased or otherwise acquired on a U.S. Exchange during the Class Period must have been held through at least one of the alleged corrective disclosures dates (i.e., January 14, 2016, July 18, 2016, July 19, 2016, and July 27, 2016). *Id.*; *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (investors who bought and sold shares "before the relevant truth begins to leak out" have no recognized losses because "the misrepresentation will not have led to any loss"). The calculation of a Claimant's Recognized Claim also takes into account the PSLRA's statutory limitation on recoverable damages. *See* 15 U.S.C. § 78u-4(e).

calculated under the Plan) by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Joint Decl., ¶ 123. Thereafter, following approval of the Settlement and upon the Court's entry of an Order approving a distribution plan, the Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See Cardizem*, 218 F.R.D. at 531 (approving plan that adopted a *pro rata* method for calculating each class member's share of the settlement fund).

The Plan was fully disclosed in the Notice mailed to potential Settlement Class Members and nominees. To date, there have been no objections to the Plan. Joint Decl. ¶ 126. Accordingly, Lead Counsel believe that the Plan is fair, reasonable, and adequate and should be approved.

## IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class for settlement purposes. *See* ECF No. 67, ¶¶ 1-3 (analyzing how the Action satisfies each element for class certification). Nothing has changed to alter the propriety of the Court's provisional certification and, for all the reasons stated in Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement and supporting memorandum (ECF No. 66), Lead Plaintiffs respectfully request that the Court finally certify the Settlement Class for purposes of settlement. *See Gen. Motors*, 315 F.R.D. at 235 (approving certification of

settlement class where "[n]othing ha[d] changed to alter the Court's" provisional certification in the preliminary approval order).

## V.     NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires certified classes to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In securities actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). "To comport with the requirements of due process, notice must be reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). Here, both the content of the Court-approved Notice and its distribution to Settlement Class Members satisfy all applicable notice requirements.

In accordance with the Preliminary Approval Order, JND disseminated the Notice and Claim Form to potential Settlement Class Members via First-Class mail, or email, at the addresses set forth in the records provided by FCA's U.S. transfer agent, as well as the addresses of all other potential Settlement Class Members who could be identified through further reasonable effort. Segura Decl., ¶¶ 3-13. In addition, JND caused the Summary Notice to be published in *Investor's Business Daily* on March 18, 2019, and transmitted over *PR Newswire* on March 22, 2019.

*Id*. ¶ 13. The Notice and Claim Form, as well as the Stipulation, Preliminary Approval Order, and other relevant documents, were also posted on the Settlement website. *Id*. ¶ 16. Defendants also issued notice of the Settlement pursuant to CAFA. Joint Decl., ¶ 116 n.11.

The Notice informs Settlement Class Members of, among other things, the: (i) amount of the Settlement; (ii) reasons why the Parties are proposing the Settlement; (iii) estimated average recovery per affected share of FCA common stock; (iv) maximum amount of attorneys' fees and expenses that will be sought; (v) identity and contact information for representatives of Lead Counsel available to answer questions concerning the Settlement; (vi) right of Settlement Class Members to object to the Settlement; (vii) right of Settlement Class Members to seek to be excluded from the Settlement Class; (viii) binding effect of a judgment on Settlement Class Members; (ix) dates and deadlines for certain Settlement-related events; and (x) way to obtain additional information about the Action and Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also contains the Plan of Allocation and provides Settlement Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund. *See* Segura Decl., Ex. A.

In sum, the Notice provides sufficient information for Settlement Class Members to make informed decisions regarding the Settlement, fairly apprises them of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process. Comparable notice programs are routinely approved by courts in this Circuit. *See, e.g.*, *Gen. Motors*, 315 F.R.D. at 242.

## VI.   CONCLUSION

For the reasons stated herein and in the Joint Declaration and Fee Motion filed herewith, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement, approve the Plan of Allocation, and certify the Settlement Class.

Dated:  May 1, 2019                    Respectfully submitted,

                                       */s/ E. Powell Miller*
                                       E. Powell Miller (P39487)
                                       Sharon S. Almonrode (P33938)
                                       **THE MILLER LAW FIRM, P.C.**
                                       950 West University Drive
                                       Suite 300
                                       Rochester, MI 48307
                                       Telephone:  (248) 841-2200
                                       Facsimile:  (248) 652-2852
                                       epm@millerlawpc.com
                                       ssa@millerlawpc.com

                                       **KESSLER TOPAZ MELTZER
                                        & CHECK, LLP**
                                       Gregory M. Castaldo
                                       280 King of Prussia Road
                                       Radnor, PA  19087

Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
gcastaldo@ktmc.com

– and –

Stacey M. Kaplan
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  (415) 400-3000
Facsimile:  (415) 400-3001
skaplan@ktmc.com

*Counsel for Lead Plaintiffs and the Settlement Class*

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive
Suite 300
Rochester, MI 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
