## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CARL PALAZZOLO and ALBERT FERRANDI, Individually and On Behalf of All Others Similarly Situated, | Case No. 4:16-cv-12803-LVP-SDD |
| Plaintiffs, | **CLASS ACTION** |
| v. | Hon. Linda V. Parker<br>District Court Judge |
| FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, and REID BIGLAND, | Stephanie Dawkins Davis<br>Magistrate Judge |
| Defendants. | |

## LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

Lead Counsel, Kessler Topaz Meltzer & Check, LLP and The Miller Law

Firm, P.C., hereby move this Court, pursuant to Rules 23(e) and 23(h) of the Federal

Rules of Civil Procedure, for entry of an Order awarding attorneys' fees and

reimbursement of litigation expenses, including reimbursement to Lead Plaintiffs,

Carl Palazzolo and Albert Ferrandi, for costs incurred directly related to their

representation of the Settlement Class.[1] In support, Lead Counsel rely upon their

Memorandum of Law in Support of this Motion, the Joint Declaration of Stacey M.

Kaplan and Sharon S. Almonrode and Exhibits, oral argument of counsel, and such

other and further material as the Court may request and consider.

Dated:  May 1, 2019                          Respectfully submitted,

                                             /s/ E. Powell Miller
                                             E. Powell Miller (P39487)
                                             Sharon S. Almonrode (P33938)
                                             **THE MILLER LAW FIRM, P.C.**
                                             950 West University Drive
                                             Suite 300
                                             Rochester, MI 48307
                                             Telephone:  (248) 841-2200
                                             Facsimile:  (248) 652-2852
                                             epm@millerlawpc.com
                                             ssa@millerlawpc.com

                                             **KESSLER TOPAZ MELTZER**
                                             **& CHECK, LLP**
                                             Gregory M. Castaldo
                                             280 King of Prussia Road

---

[1] A proposed Order granting the requested relief will be submitted with Lead Counsel's reply papers on May 29, 2019, after the deadline for objecting to the motion has passed.

Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
gcastaldo@ktmc.com

– and –

Stacey M. Kaplan
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  (415) 400-3000
Facsimile:  (415) 400-3001
skaplan@ktmc.com

*Counsel for Lead Plaintiffs and the
Settlement Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CARL PALAZZOLO and ALBERT FERRANDI, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, and REID BIGLAND,<br><br>          Defendants. | Case No. 4:16-cv-12803-LVP-SDD<br><br>**CLASS ACTION**<br><br>Hon. Linda V. Parker<br>District Court Judge<br><br>Hon. Stephanie Dawkins Davis<br>Magistrate Judge |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND <u>REIMBURSEMENT OF LITIGATION EXPENSES</u>

## **TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ......................................................1

II.    THE REQUESTED FEE AWARD IS REASONABLE AND
       SHOULD BE APPROVED..........................................................5

    A.     Lead Counsel Are Entitled To An Award Of Attorneys' Fees
              From The Common Fund.....................................................5

    B.     The Court Should Calculate Fees As A Percentage of the
              Common Fund..................................................................6

    C.     The Requested Attorneys' Fees Are Reasonable Under the
              Percentage-of-the-Fund Method .........................................8

    D.     The Factors Considered By Courts In The Sixth Circuit Support
              Approval Of The Requested Fee ........................................10

        1.     The Value Of The Benefit Rendered To The Settlement
                     Class Supports The Requested Fee ...........................10

        2.     The Value Of Lead Counsel's Services On An Hourly
                     Basis, And A Lodestar Cross-Check, Supports The Fee
                     Request...........................................................12

        3.     The Contingent Nature Of Lead Counsel's
                     Representation Supports The Fee Request ................15

        4.     Society's Stake In Rewarding Attorneys Who Enforce
                     The Securities Laws Supports the Fee Request.......17

        5.     The Complexity Of The Litigation Supports The Fee
                     Request...........................................................18

        6.     The Professional Skill And Standing Of Counsel
                     Involved On Both Sides Supports The Fee Request.................20

III.   LEAD COUNSEL'S LITIGATION EXPENSES ARE
       REASONABLE AND SHOULD BE APPROVED ....................22

IV.    LEAD PLAINTIFFS SHOULD BE AWARDED THEIR
       REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(a)(4) ....................24

V.     CONCLUSION....................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)....................................21

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .................................15

*Bailey v. AK Steel Corp.*,
  2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ....................................14

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)............................... 16-17

*Barnes v. City of Cincinnati*,
  401 F.3d 729 (6th Cir. 2005) ............................................................12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)..........................................................................18

*The Bd. of Trs. of the City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*,
  2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) ........................... 8-9

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .................................11

*Blum v. Stenson*,
  465 U.S. 886 (1984)............................................................................7

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ............................................................6

*Burges v. Bancorpsouth, Inc.*,
  No. 3:14-cv-01564 (M.D. Tenn. Sept. 21, 2018), ECF No. 265 .........9

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ....................................................... 6-7

*In re Caraco Pharm. Labs., Ltd. Sec. Litig.*,
  No. 2:09-cv-12830-AJT-DAS (E.D. Mich. June 26, 2013), ECF No. 96 ........ 8-9

*In re Cardinal Health Inc. Sec. Litig.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ........................................................*passim*

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ..........................................................7, 17, 20

*In re Cardizem CD Antitrust Litig.*,
  No. 2:99-md-1278-NGE (E.D. Mich. Nov. 25, 2002), Order No. 47 ........ 8-9, 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ....................................................................... 4, 7-8

*In re Chemed Corp. Sec. Litig.*,
  2014WL 12650642 (S.D. Ohio July 15, 2014)............................................. 9-10

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ..........................................................6, 21, 22

*In re DPL Inc., Sec. Litig.*,
  307 F. Supp. 2d 947 (S.D. Ohio 2004) ............................................................10

*Dudenhoeffer v. Fifth Third Bancorp*,
  2016 WL 8135394 (S.D. Ohio July 11, 2016)....................................................9

*Eltman v. Grandma Lee's, Inc.*,
  1986 WL 53400 (E.D.N.Y. May 28, 1986)................................................. 17-18

*In re F&M Distribs., Inc. Sec. Litig.*,
  1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999) ...............7, 14, 15, 21

*Fogarazzo v. Lehman Bros., Inc.*,
  2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ................................................ 18-19

*In re Gen. Motors. Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...............................................................................6

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ............................................................................6

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ....................................................11

*In re JDS Uniphase Corp. Sec. Litig.*,
   No. 4:02-cv-01486-CW (N.D. Cal. Nov. 27, 2007), ECF No. 1883 ............ 16-17

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ................................................................................. 6

*Kogan v. AIMCO Fox Chase, L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) ..................................................................... 14

*In re Lason, Inc. Sec. Litig.*,
   No. 2:99-cv-76079-AJT (E.D. Mich. Mar. 31, 2003), ECF No. 93 ................ 8-9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................................ 11

*In re MicroStrategy, Inc. Sec. Litig.*,
   172 F. Supp. 2d 778 (E.D. Va. 2001) ................................................................. 17

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ...................................................... 5-6, 11, 22

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   No. 4:14-cv-11191 (E.D. Mich. Mar. 9, 2016), ECF No. 102-5 ................. 14-15

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) .................................................... 18-19, 22, 24

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010) ........................................................................ 16-17

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009)............................................. 16-17

*In re Packaged Ice Antitrust Litig.*,
   2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................................... 8, 12-13

*In re Prandin Direct Purchaser Antitrust Litig.*,
   2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ................................................... 9

*In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*,
   2016 WL 7735229 (E.D. Tenn. Dec. 12, 2016) ................................................. 24

*Ramey v. The Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) .......................................................10, 12, 17, 18

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) .................................................................6, 7

*In re Regions Morgan Keegan Sec., Derivative & erisa Litig.*,
  2013 WL 12110279 (W.D. Tenn. Aug. 5, 2013)..................................9

*The Rikos v. Proctor & Gamble Co.*,
  2018 WL 2009681 (S.D. Ohio Apr. 30, 2018)..................................15

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
  1996 WL 780512 (E.D. Mich. Dec. 20, 1996)....................................8

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .............................................................13

*Robbins v. Koger Props. Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................... 16-17

*In re Se. Milk Antitrust Litig.*,
  2013 WL 2155387 (E.D. Tenn. May 17, 2013) .........................*passim*

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2014 WL 2946459 (E.D. Tenn. June 30, 2014) ..................................7

*Stanley v. U.S. Steel Co.*,
  2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ........................... 15-16

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)............................................................ 6-7

*In re Telectronics Pacing Sys., Inc., Accutix Atrial "J" Leads Prods.
  Liab. Litig.*,
  137 F. Supp. 2d 1029 (S.D. Ohio 2001)............................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................................18

*In re The Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) .......................................................19

v

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza*
   *Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ....................................................................6

*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ......................................24

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...............................................................6

*In re World Trade Ctr. Disaster Site Litig.*,
   754 F.3d 114 (2d Cir. 2014) ...................................................................6

## Statutes

15 U.S.C. § 78u-4(a) ...................................................................... 7-8

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.    Whether the Court should approve Lead Counsel's request for an award of attorneys' fees.

2.    Whether the Court should approve Lead Counsel's request for reimbursement of litigation expenses.

3.    Whether the Court should approve Lead Plaintiffs' requests for reimbursement of reasonable costs related to their representation of the Settlement Class.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

<u>Rules</u>

    Federal Rule of Civil Procedure 23

<u>Cases</u>

*Ramey v. The Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)

Court-appointed Lead Counsel, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and The Miller Law Firm, P.C. ("Miller Law") (together, "Lead Counsel"), respectfully submit this memorandum of law in support of their motion, pursuant to Rules 23(e) and 23(h) of the Federal Rules of Civil Procedure, for an award of attorneys' fees in the amount of 30% of the Settlement Fund.[1] Lead Counsel also seek reimbursement in the total amount of $265,764.05 for litigation expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action, which amount includes proposed awards pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for costs incurred by Lead Plaintiffs, Carl Palazzolo and Albert Ferrandi, directly related to their representation of the Settlement Class in the aggregate amount of $10,000.

## I.      PRELIMINARY STATEMENT

After more than two years of dedicated litigation efforts, Lead Counsel have successfully negotiated a settlement of this securities class action with Defendants Fiat Chrysler Automobiles N.V. ("FCA" or the "Company"), Richard K. Palmer, and Reid Bigland (collectively, the "Signatory Defendants"). The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange

---

[1]      Unless otherwise noted, capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated January 31, 2019 (ECF No. 66-2) or in the accompanying joint declaration of Stacey M. Kaplan and Sharon S. Almonrode (the "Joint Declaration" or "Joint Decl."). Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

for $14.75 million in cash. By any measure, the Settlement represents an excellent result; it provides meaningful compensation to the Settlement Class while avoiding the substantial risks and delays of continued litigation.

Notably, the Settlement represents between approximately 10% and 25% of the Settlement Class's *maximum* recoverable damages as estimated by Lead Plaintiffs' damages expert—a sizeable percentage when compared to other recent securities class action settlements.[2] Here, the Settlement provides a substantial and certain recovery for the Settlement Class, while eliminating the risks of continued litigation, through the completion of discovery, class certification, summary judgment, trial, and appeals. With no guarantee of recovery when they initiated the case, Lead Counsel devoted the necessary resources—in terms of time and money—in order to achieve a strong result for the Settlement Class. For these efforts, Lead Counsel have not received any compensation.

As detailed in the Joint Declaration, Lead Counsel vigorously pursued this litigation from its outset, and was fully prepared to continue down the path towards trial. Among their efforts, Lead Counsel: (i) conducted a thorough legal and factual

---

[2]    *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements - 2018 Review and Analysis*, Cornerstone Research, Figure 5 (2019), www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis (reporting that in 2018, the median securities class action settlement as a percentage of estimated damages was 9.9% for cases with estimated damages between $25-$74 million and 4.9% for cases with estimated damages between $75-$149 million).

investigation into the Settlement Class's claims; (ii) researched and drafted a detailed amended complaint; (iii) opposed (and defeated in its entirety) Defendants' motion to dismiss; (iv) engaged in extensive and hotly-contested discovery, including participation in numerous meet and confers with counsel for Defendants regarding the scope of discovery as well as the review and analysis of more than one million pages of documents produced by FCA; (v) consulted with experts in the areas of sales reporting and disclosure policies and practices in the automotive industry, market efficiency, loss causation, and damages; (vi) researched and drafted, in large part, a motion for class certification due to be filed just days after the Settlement was reached; and (vii) engaged in protracted and hard-fought settlement negotiations under the supervision of a highly-regarded mediator, the Honorable Daniel Weinstein (Ret.) ("Judge Weinstein"). Joint Decl., ¶¶ 26-93.

Through April 15, 2019, Lead Counsel have devoted over 12,889 hours with a resulting lodestar of $6,041,404.50, to the investigation, prosecution, and resolution of the Action.[3] Here, unlike most cases in which counsel seek a fee which *exceeds* their lodestar, *see, e.g., In re Cardinal Health Inc. Securities Litigation*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007) (observing that "[m]ost courts agree that the typical lodestar multiplier in a large . . . class action[] ranges from 1.3 to 4.5"), Lead

---

[3]    Lead Counsel will continue to devote resources to the Action through the completion of the settlement administration process.

Counsel's fee request here is *less than* the total lodestar value of the time that Lead Counsel dedicated to the Action. It is against this backdrop that Lead Counsel respectfully submit their request for a fee award of 30% of the Settlement Fund, a request made pursuant to retention agreements with Lead Plaintiffs at the outset of the litigation.[4]  Both Lead Plaintiffs fully support Lead Counsel's fee request.[5]

Pursuant to the Court's Preliminary Approval Order, more than 96,500 copies of the Notice have been disseminated to potential Settlement Class Members and nominees as of April 30, 2019, and the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*. *See* Declaration of Luiggy Segura ("Segura Decl."), ¶¶ 12-13, attached to the Joint Declaration as Exhibit 3. The Notice advises recipients that Lead Counsel would be applying to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, and reimbursement of Litigation Expenses in an amount not to exceed $400,000. Segura Decl., Ex. A. The fees and expenses sought by Lead Counsel do not exceed these amounts. The Notice further informs Settlement Class Members that they can

---

[4]     A fee agreement entered into by a PSLRA lead plaintiff and its counsel at the outset of the litigation should either be considered presumptively reasonable or, at the very least, given considerable weight by the Court. *See Cardinal Health*, 528 F. Supp. 2d at 759 (strongly endorsing presumption of reasonableness for ex-ante fee agreements); *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (ex-ante fee agreements in securities class actions should be given "a presumption of reasonableness").

[5]     *See* Declaration of Carl Palazzolo ("Palazzolo Decl."), ¶ 7, and Declaration of Albert Ferrandi ("Ferrandi Decl."), ¶ 7, attached to the Joint Declaration as Exhibits 1 and 2, respectively.

object to the requests for attorneys' fees and expenses until May 15, 2019. *Id*. While the deadline to object has not yet passed, to date, no objections to the amounts of attorneys' fees and expenses set forth in the Notice have been received. Joint Decl., ¶¶ 12, 128.[6]

For the reasons discussed herein, the requested fee is eminently fair and reasonable, particularly in light of the favorable recovery obtained for the Settlement Class and the fact that such an award does not even cover the lodestar incurred by Lead Counsel in litigating the Action. In addition, Lead Counsel also respectfully submit that the expenses for which they seek reimbursement were reasonable and necessary for the successful prosecution of the Action—and that the requests for reimbursement to Lead Plaintiffs pursuant to the PSLRA for the time they dedicated to the Action on behalf of the Settlement Class are likewise reasonable and appropriate.

## II. THE REQUESTED FEE AWARD IS REASONABLE AND SHOULD BE APPROVED

### A. Lead Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

It has long been recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *N.Y. State Teachers' Ret. Sys. v. Gen.*

---

[6]   Lead Counsel will address any objections received after this submission in their reply papers to be filed on May 29, 2019.

*Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). In awarding attorneys' fees, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). In the Sixth Circuit, the standard for an award of attorneys' fees in a common fund case is that the award be "reasonable under the circumstances." *Id.*; *see also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008).

## B.    The Court Should Calculate Fees As A Percentage of the Common Fund

Where a settlement produces a common fund, courts in the Sixth Circuit have discretion whether to employ either the percentage-of-the-fund method or the lodestar method in awarding attorneys' fees. *Rawlings*, 9 F.3d at 516-17. Notwithstanding that discretion, this Circuit has observed a "trend towards adoption of a percentage of the fund method in [common fund] cases." *Id.* at 515; *see also In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013).[7]

---

[7]    Other circuits have similarly endorsed the percentage-of-recovery method. *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014); *In re Gen. Motors. Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988). The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261,

Similarly, courts in this District have noted a "preference for the percentage-of-the-fund method." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003); *see also In re F&M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999).

The rationale for compensating counsel in common fund cases using the percentage-of-the-fund method is sound. First, this method "more accurately reflects the results achieved" and "has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014). In other words, the percentage-of-the-fund method "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Se. Milk*, 2013 WL 2155387, at *2 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). Second, the percentage-of-the-fund method decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis, and courts employing the percentage-of-the-fund method often utilize a less rigorous lodestar "cross-check" to confirm the reasonableness of the requested fee. *See infra* Section II.D.2.; *see also Rawlings*, 9 F.3d at 515. Finally, the percentage-of-the-fund method is particularly appropriate in PSLRA cases. *See* 15 U.S.C. § 78u-4(a)(6) ("Total

---

1269-71 (D.C. Cir. 1993). Moreover, in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class . . . ."

attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."); *see also Cendant*, 404 F.3d at 188 n.7 ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable.").

### C.   The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel's 30% fee request falls within the range of fees awarded in the Sixth Circuit on a percentage basis in complex common fund cases. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *18 (E.D. Mich. Dec. 20, 1996) (recognizing acceptable range of fees to be 20% to 50% of the common fund); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."). In complex class actions, Judges in this District commonly grant fee awards between 30-33% percent of the settlement fund. *See, e.g., In re Caraco Pharm. Labs., Ltd. Sec. Litig.*, No. 2:09-cv-12830-AJT-DAS (E.D. Mich. June 26, 2013), ECF No. 96 (Tarnow, J.) (awarding 33% fee), attached hereto as Exhibit 1; *The Bd. of Trs. of the City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at *6 (E.D. Mich. Dec. 27, 2013) (Murphy, J.) (awarding 30% fee); *In re Lason, Inc. Sec. Litig.*, No. 2:99-cv-76079-AJT (E.D. Mich. Mar. 31, 2003), ECF No. 93 (Tarnow,

8

J.) (awarding 30% fee), attached hereto as Exhibit 2; *In re Cardizem CD Antitrust Litig.*, No. 2:99-md-1278-NGE (E.D. Mich. Nov. 25, 2002), Order No. 47 (Edmunds, J.) (awarding 30% fee).

Moreover, ample precedent exists in the Sixth Circuit for granting fees to plaintiff's counsel in class actions and other complex litigation that are equal to or greater than Lead Counsel's 30% fee request here. *See Se. Milk*, 2013 WL 2155387, at *3 (finding 33% "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"). *See, e.g., Burges v. Bancorpsouth, Inc.*, No. 3:14-cv-01564 (M.D. Tenn. Sept. 21, 2018), ECF No. 265 (awarding fees of 33⅓% of $13 million settlement fund, resulting in negative multiplier), attached hereto as Exhibit 3; *Dudenhoeffer v. Fifth Third Bancorp*, 2016 WL 8135394, at *1 (S.D. Ohio July 11, 2016) (awarding fees of 33⅓% of $6 million settlement fund, resulting in 0.65 multiplier); *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *4-5 (E.D. Mich. Jan. 20, 2015) (awarding 33.3% of $19 million settlement fund, resulting in 3.01 multiplier); *In re Regions Morgan Keegan Sec., Derivative & erisa Litig.*, 2013 WL 12110279, at *7-8 (W.D. Tenn. Aug. 5, 2013) (awarding 30% of $62 million settlement fund, resulting in 3.1 multiplier); *Se. Milk*, 2013 WL 2155387, at *8 (awarding 33⅓% of $158.6 million settlement fund, resulting in 1.90 multiplier); *In re Chemed Corp. Sec. Litig.*,

2014WL 12650642, at *1 (S.D. Ohio July 15, 2014) (awarding 33% of $6 million

settlement fund, resulting in 0.85 multiplier).

### D.   The Factors Considered By Courts In The Sixth Circuit Support Approval Of The Requested Fee

In reviewing the reasonableness of a fee request, the Sixth Circuit instructs

district courts to consider the following six "*Ramey*" factors:

> 1) the value of the benefit rendered to the corporation or its
> stockholders, 2) society's stake in rewarding attorneys who produce
> such benefits in order to maintain an incentive to others, 3) whether the
> services were undertaken on a contingent fee basis, 4) the value of the
> services on an hourly basis [the lodestar cross-check], 5) the complexity
> of the litigation, and 6) the professional skill and standing of counsel
> involved on both sides.

*Ramey v. The Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974).

Each of the *Ramey* factors confirms that the requested 30% fee is fair and reasonable.

### 1.   The Value Of The Benefit Rendered To The Settlement Class Supports The Requested Fee

The first *Ramey* factor requires courts to evaluate the benefit of the recovery

for the class. "District courts in this Circuit widely regard [this] factor as the most

important." *Cardinal Health*, 528 F. Supp. 2d at 764; *see also In re DPL Inc., Sec.

Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004) ("Herein, the award of attorneys'

fees must be driven by the results obtained by Plaintiffs' counsel."). Here, Lead

Counsel submit that the $14.75 million Settlement is an excellent result for the

Settlement Class, both quantitatively and when considering the risk of obtaining a smaller recovery (or no recovery) had the Action proceeded to trial.

Above all, in terms of damages, the Settlement represents a recovery of between approximately 10% and 25% of the Settlement Class's *maximum* recoverable damages as estimated by Lead Plaintiffs' damages expert—a substantial result when compared to the median securities class action settlement as a percentage of damages. *See supra* note 2; Joint Decl., ¶ 11. Courts regularly approve settlements in PSLRA cases recovering a comparable or smaller percentage of maximum damages. *See, e.g., Gen. Motors*, 315 F.R.D. at 238 (approving settlement "represent[ing] approximately 11% to 25% of [maximum possible damages]" and finding it "a very favorable recovery compared to the approved settlements in other securities fraud actions").[8]

In addition to representing a substantial portion of the Settlement Class's estimated damages, the Settlement is also significant in light of the risks to further litigation. At the time the Parties agreed to settle the Action, Lead Plaintiffs were

---

[8]     *See also In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement representing "approximately 8% of the maximum recoverable damages . . . .equals or surpasses the recovery in many other securities class actions"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (settlement representing approximately 6.25% of estimated damages is "at the higher end of the range of reasonableness of recovery in class action securities litigations"); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering around 3.5% of the maximum damages that plaintiffs believed could be recovered at trial and noting that the amount was within the median recovery in securities class actions settled in the last few years).

just days away from filing their motion for class certification—a motion that would be hotly contested by Defendants. And, going forward, Defendants would have continued to advance their numerous defenses to Lead Plaintiffs' claims—among others, that none of the challenged statements were materially false or misleading, that they did not act with the requisite fraudulent intent, and that the alleged misstatements did not ultimately cause Lead Plaintiffs' losses. Joint Decl., ¶¶ 100-11. Had the Action continued, Defendants also would surely challenge the Settlement Class's alleged damages as estimated by Lead Plaintiffs' damages expert, arguing that damages were significantly less, if any. *Id*. ¶¶ 112-13.

Thus, the Settlement Amount—$14.75 million—is an excellent result for investors that will provide a guaranteed recovery, while avoiding the many complexities and risks of further litigation.

### 2. The Value Of Lead Counsel's Services On An Hourly Basis, And A Lodestar Cross-Check, Supports The Fee Request

The fourth *Ramey* factor compares the fee request (as a percentage of the settlement fund) to counsel's lodestar[9]—often referred to as a "lodestar cross-check." When utilizing the percentage-of-the-fund method to award attorneys' fees, *see supra* Section II.B., courts will look at the hours expended by counsel, either as a factor in the fee analysis, or as an independent "cross-check" to prevent counsel

---

[9] Lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005).

from receiving a windfall. *See Cardinal Health*, 528 F. Supp. 2d at 764; *Packaged Ice Antitrust*, 2011 6209188, at \*18.

Here, a lodestar cross-check fully supports Lead Counsel's 30% fee request. As detailed herein and in the Joint Declaration, for more than two years Lead Counsel exerted substantial efforts in advancing this litigation in the face of aggressive and highly-skilled defense attorneys. In total, Lead Counsel spent over 12,889 hours of attorney and other professional support time prosecuting the Action for the benefit of the Settlement Class through April 15, 2019. Based on these hours, Lead Counsel's lodestar is $6,041,404.50. Joint Decl., ¶¶ 129, 140; *see also* Declaration of Gregory M. Castaldo ("Castaldo Decl.") and Declaration of Sharon S. Almonrode ("Almonrode Decl.") attached to the Joint Declaration as Exhibits 4 and 5, respectively.[10] Accordingly, the 30% fee request, which equates to $4,425,000 (before interest), represents a multiplier of 0.73 of the total lodestar. In other words, the requested fee represents only 73% of the lodestar value of the time that Lead Counsel dedicated to the Action.

This "negative" or fractional multiplier is well below the range of multipliers commonly awarded in comparable litigation. Fee awards in class actions with

---

[10]     As is customary in seeking a percentage-of-the-fund award in a common fund case and submitting data for a lodestar cross-check, Lead Counsel have included schedules identifying the lodestar of each firm (by individual, position, billing rate, and hours billed). *See Se. Milk*, 2013 WL 2155387, at \*2 n.3; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) (the cross-check "need entail neither mathematical precision nor bean-counting").

substantial contingency risks generally represent positive multipliers of counsel's lodestar, often ranging from one to four times the lodestar or even higher. *See Cardinal Health*, 528 F. Supp. 2d at 767 (approving multiplier of approximately 5.9, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, 2008 WL 553764, at *2-3 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically . . . increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"). *See also* Ex. 2 (awarding fees amounting to 1.8 multiplier); *Cardizem*, No. 2:99-md-1278-NGE at Order No. 47 (awarding fees amounting to 3.7 multiplier); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000) (awarding fees amounting to 2.49 multiplier); *F&M*, 1999 U.S. Dist. LEXIS 11090, at *5, 19-20 (awarding fees amounting to 1.35 multiplier). Likewise, a review of the lodestar multipliers in the Sixth Circuit cases cited above at Section II.C., all of which involved percentage awards of 30% or higher in comparable complex litigation, reveals that 0.73 is at the very low end of multipliers typically awarded.[11]

---

[11] The accompanying Castaldo and Almonrode Declarations set forth the hourly rates utilized by Lead Counsel in calculating their lodestar. These rates range from: (i) $625 per hour to $920 per hour for partners; (ii) $350 per hour to $690 per hour for counsel, associates and staff attorneys; (iii) $85 per hour to $275 per hour for paralegals and law clerks; and (vi) $250 per hour to $465 per hour for in-house investigators. *See* Castaldo Decl., Ex. 1; Almonrode Decl., Ex. 1. Lead Counsel believe these rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District. *See, e.g.*, *N.Y. State Teachers'*

Here, despite the existence of numerous substantial litigation risks in the case from the outset, Lead Counsel are seeking a fee that is *less than* the lodestar value of their time. Courts have repeatedly recognized that a percentage fee request that is less than counsel's lodestar provides strong confirmation for the reasonableness of the award. *See, e.g., The Rikos v. Proctor & Gamble Co.*, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018) ("Dividing the amount Plaintiffs' Counsel request ($4,139,987.48) by the lodestar results in a negative multiplier, which demonstrates that the fee sought is reasonable."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("courts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award").

### 3.    The Contingent Nature Of Lead Counsel's Representation Supports The Fee Request

"Whether counsel's services were undertaken on a contingent fee basis is another factor for the Court to consider in evaluating a fee request." *Delphi*, 248 F.R.D. at 503-04. Indeed, courts in this Circuit recognize that the attorneys' contingent risk "counsels in favor of a generous fee." *F&M*, 1999 U.S. Dist. LEXIS 11090, at *18 (noting importance that counsel "undertook this case on a contingent fee basis, which required them to fund all significant litigation costs while facing the risk of rejection of their clients' claims on the merits"); *Stanley v. U.S. Steel Co.*,

---

*Ret. Sys. v. Gen. Motors Co.*, No. 4:14-cv-11191 (E.D. Mich. Mar. 9, 2016), ECF No. 102-5, at 7-9.

2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

Lead Counsel have received no compensation during the more than two years this Action has been ongoing. During this time, Lead Counsel invested over 12,889 hours for a total lodestar of $6,041,404.50, and incurred out-of-pocket expenses of $255,764.05. Joint Decl., ¶¶ 129, 140, 133-34, 143. Additional further work in connection with the Settlement and claims administration will still be required. Moreover, any fee award to Lead Counsel has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses. And, unlike defense counsel—who typically receive payment on a timely basis whether they win or lose—Lead Counsel sustained the entire risk that they would have to fund the expenses of this Action and that, unless Lead Counsel succeeded, they would not be entitled to any compensation whatsoever. *See Delphi*, 248 F.R.D. at 503-04 (granting fee request where "Counsel for the Securities Class have prosecuted this action entirely on a contingent basis, knowing that it possibly could last for four or five years, require the expenditure of thousands of attorney hours and millions of dollars in expenses and ultimately result in a loss at summary judgment or at trial.").[12]

---

[12]    The commencement of a class action is no guarantee of success; these cases are not always settled, nor are a plaintiff's lawyers always successful, especially in the post-PSLRA era of securities litigation. There have been numerous hard-fought lawsuits where, because of discovery of facts unknown when the case was

4.   **Society's Stake In Rewarding Attorneys Who Enforce The Securities Laws Supports the Fee Request**

The second *Ramey* factor requires courts to consider "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others." *Cardizem*, 218 F.R.D. at 533; *In re Telectronics Pacing Sys., Inc., Accutix Atrial "J" Leads Prods. Liab. Litig.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources."). Adequate compensation is a necessary component of encouraging attorneys to undertake such risk. *See In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001) ("[T]he process of setting a proper fee in a PSLRA case must include an incentive component to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class in a securities fraud case."); *See Eltman v. Grandma*

---

commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, many years of excellent professional efforts of members of the plaintiffs' bar produced no fee to a plaintiff's counsel. *See e.g., In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009); *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiffs' counsel had incurred over $6 million in expenses and a lodestar of approximately $48 million (based on over 100,000 hours of time)); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming summary judgment in favor of defendants on loss causation grounds); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (granting defendants' judgment as a matter of law following plaintiff verdict); *In re JDS Uniphase Corp. Sec. Litig.*, No. 4:02-cv-01486-CW (N.D. Cal. Nov. 27, 2007), ECF No. 1883 (verdict for defendants); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal).

*Lee's, Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

As the Supreme Court has acknowledged, private securities class actions are an important supplement to the work of the U.S. Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"). This is particularly true here as neither the SEC nor the DOJ—both of which have been investigating the same FCA sales reporting practices for years—have brought charges or claims against any of the Defendants based on the facts underlying this Action. Joint Decl., ¶ 10. As it currently stands, this Settlement may be the only recovery for the Settlement Class.

### 5.    The Complexity Of The Litigation Supports The Fee Request

The fifth *Ramey* factor—the complexity of the litigation—is a significant factor to be considered in determining the reasonableness of an attorneys' fee award. *See Delphi*, 248 F.R.D. at 504. As numerous courts have recognized, "[s]ecurities litigation class actions are inherently complex." *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006);

*Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("[C]ourts have recognized that, in general, securities class actions are highly complex."). Indeed, "[t]he very nature of a securities fraud case demands a difficult level of proof to establish liability. Elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009).

As the Court is aware, this Action involved a number of complex and disputed questions of law and fact that placed the ultimate outcome of the case in doubt. As detailed in the Joint Declaration, Lead Counsel and Lead Plaintiffs faced significant risks to proving Defendants' liability, loss causation, and damages. Joint Decl., ¶¶ 95-113. Throughout the Action, Defendants vigorously contested Lead Plaintiffs' claims—i.e., that they acted with the requisite scienter and that the statements at issue were misleading or material to investors.

In particular, Defendants maintained that even if Lead Plaintiffs could prove that they engaged in a scheme to falsify reported U.S. vehicles sales, that scheme had no impact on the sales streak at issue in this Action. Joint Decl., ¶ 101. Defendants also contested loss causation, arguing that the declines in the price of FCA common stock were not caused by the revelation of any relevant truth related to their alleged fraud but rather, other negative company-specific information. For example, in their motion to dismiss, Defendants argued that the price decline in FCA

common stock on July 27, 2016 was due to "a common market reaction to the quarterly earnings disclosures that were released that morning," not the July 26, 2016 disclosures regarding FCA's purported streak of year-over-year U.S. vehicle sales and that the January 14, 2016 disclosure—alerting the market to the existence of a lawsuit filed by FCA dealers—had nothing to do with the sales streak. *Id.* ¶¶ 108-11. Additionally, this case involved complex sales reporting and disclosure policies and practices in the automotive industry. *Id.* ¶ 85. These unfamiliar subjects would have undoubtedly presented factual intricacies and challenges for any jury.

The foregoing case-specific complexities coupled with the difficult nature of litigation under the PSLRA generally made it far from certain that any recovery, let alone one valued at between approximately 10% and 25% of the Settlement Class's estimated *maximum* recoverable damages, would ultimately be obtained.

### 6. The Professional Skill And Standing Of Counsel Involved On Both Sides Supports The Fee Request

Finally, courts in this Circuit evaluate the professional skill and standing of counsel in determining the reasonableness of a fee request. *See Cardizem*, 218 F.R.D. at 533. Here, the skill and standing of counsel for all parties was of the highest caliber.

Both Lead Counsel firms have national standing and extensive experience in litigating securities and other complex class actions. *See* firm résumés attached as Exhibit 4 to the Castaldo Declaration and Exhibit 3 to the Almonrode Declaration.

Lead Counsel prosecuted the case vigorously, provided high quality legal services, and achieved a great result for the Settlement Class. Moreover, the effort and skill of Lead Counsel in surviving (entirely) Defendants' motion to dismiss, navigating through highly contested discovery, and presenting a strong case throughout the Parties' settlement discussions was essential to achieving a meaningful resolution of the Action. *See F&M*, 1999 U.S. Dist. LEXIS 11090, at *19 ("The skill and competence of the attorneys for the Plaintiffs was evident, especially when viewed on the basis of the results that they obtained in this case[.]").

The quality of opposing counsel is also important in evaluating the services rendered by Lead Counsel. *See Delphi*, 248 F.R.D. at 504. Defendants were represented by very skilled attorneys from the nationwide firms of Sullivan & Cromwell LLP and Bracewell LLP, both of which have well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."). In the face of this formidable opposition, Lead Counsel were able to persuade Defendants to settle the case at both a point in the litigation and on terms that were highly favorable to the Settlement Class.

21

## III.   LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel also request reimbursement of the expenses they incurred in prosecuting and resolving the Action in the total amount of $255,764.05. "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *New Eng.*, 234 F.R.D. at 634-35; *see also Se. Milk*, 2013 WL 2155387, at *7 (noting "[e]xpense awards are customary" in common fund cases).

The expenses for which Lead Counsel seek reimbursement are detailed in the Castaldo and Almonrode Declarations, attached to the Joint Declaration as Exhibits 4 and 5, respectively. These declarations set forth the specific categories of expenses and amounts incurred. The types of expenses for which Lead Counsel seek reimbursement were necessarily incurred in this Action and are of the type routinely charged to classes in contingent litigation and clients billed by the hour. These include expenses associated with, among other things, research, travel, experts, document hosting/management, and mediation. *See, e.g., Gen. Motors*, 315 F.R.D. at 244-45 (approving comparable expense categories and finding them "the type routinely billed by attorneys to paying clients in similar cases"); *Delphi Corp.*, 248 F.R.D. at 505 (same).

22

The largest component of Lead Counsel's expenses was the cost of Lead Plaintiffs' experts (i.e., $139,985.20, or approximately 55% of total expenses). Another large component of Lead Counsel's expenses (i.e., $41,202.15, or approximately 16% of total expenses) was incurred for document hosting/management—specifically for the maintenance of an electronic database enabling Lead Counsel to effectively (and efficiently) analyze and review more than one million pages of documents produced in the Action. Lead Counsel also incurred the cost of formal mediation with Judge Weinstein ($35,512.00), the cost of online research ($24,478.76), and the cost of travel—airline tickets, meals, and lodging— required to prosecute this Action ($8,666.54). Joint Decl., ¶¶ 146-48. The other expenses for which Lead Counsel seek reimbursement include, among others, court fees, court reporters and transcripts, document-reproduction costs, and delivery expenses. *Id*. ¶ 149. Accordingly, reimbursement of the requested expenses is reasonable and appropriate.

In addition, the amount of expenses requested for reimbursement, a total of $265,764.05 (which amount also includes Lead Plaintiffs' costs discussed below), is less than the $400,000 maximum amount stated in the Notice. *See* Segura Decl., Ex. A. As set forth above, to date, there have been no objections to the maximum expense amount set forth in the Notice. Joint Decl., ¶¶ 12, 128.

## IV.   LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(a)(4)

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Consistent with that statute, Lead Counsel seek reimbursement in the aggregate amount of $10,000 for Lead Plaintiffs in connection with their representation of the Settlement Class.[13] Numerous courts have approved similar awards to reimburse class representatives for their time and effort on behalf of a class. *See, e.g., Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding three lead plaintiffs $5,000 each and noting that awards were warranted because the plaintiffs "assisted in the litigation communicating with counsel, reviewing pleadings, and monitoring settlement negotiations"); *In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*, 2016 WL 7735229, at *3 (E.D. Tenn. Dec. 12, 2016) (awarding $10,000 to lead plaintiff for "his reasonable costs and expenses (including lost wages) directly related to his representation of the Class"); *New Eng.*, 234 F.R.D. at 635 (awarding $5,000 to one lead plaintiff and $7,500 each to three others).

---

[13]   The Notice advises that Lead Plaintiffs may seek reimbursement of their reasonable costs and expenses in an aggregate amount not to exceed $10,000. To date, there have been no objections to this request. Joint Decl., ¶ 128.

As detailed in their accompanying declarations, Lead Plaintiffs dedicated their personal time to the prosecution of the Action on behalf of the Settlement Class. In particular, both Messrs. Palazzolo and Ferrandi reviewed significant pleadings and briefs, communicated regularly with Kessler Topaz regarding the issues in the case, significant case developments, and litigation strategy, searched for and gathered documents in response to Defendants' document requests, and approved the Settlement, as well as Lead Counsel's fee and expense requests. *See* Palazzolo Decl., ¶¶ 4-6; Ferrandi Decl., ¶¶ 4-6. For the foregoing reasons, the modest award of $5,000 sought for each of the Lead Plaintiffs here is reasonable and justified under the PSLRA based on their active involvement in the Action, and should be granted.

## V.    CONCLUSION

Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 30% of the Settlement Fund and approve reimbursement of Lead Counsel's expenses in the amount of $255,764.05, as well as the proposed awards to Lead Plaintiffs under the PSLRA in the aggregate amount of $10,000.

Dated:  May 1, 2019                       Respectfully submitted,

                                          */s/ E. Powell Miller*
                                          E. Powell Miller (P39487)
                                          Sharon S. Almonrode (P33938)
                                          **THE MILLER LAW FIRM, P.C.**
                                          950 West University Drive
                                          Suite 300
                                          Rochester, MI 48307
                                          Telephone:  (248) 841-2200

Facsimile:  (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com

**KESSLER TOPAZ MELTZER
 & CHECK, LLP**
Gregory M. Castaldo
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
gcastaldo@ktmc.com

– and –

Stacey M. Kaplan
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  (415) 400-3000
Facsimile:  (415) 400-3001
skaplan@ktmc.com

*Counsel for Lead Plaintiffs and the
Settlement Class*

# CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

/s/ E. Powell Miller
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive
Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com